**HIBOU, INC., a corporation of the Commonwealth of Pennsylvania, Plaintiff,**

**v.**

**Thor H. RAMSING et al., Defendants.**

Superior Court of Delaware,
New Castle.

Aug. 1, 1974.

tered separately in the names of Thor H. Ramsing (Thor) and Martha W. Ramsing (Martha), two of the three nonresident individual defendants. The third defendant, Cynthia Ramsing (Cynthia) has not been served with process nor has her property been attached. The defendants whose property has been seized have moved to quash service of process, to vacate the order of attachment and to dismiss the proceedings.

Some knowledge of the background of the dispute is helpful to an understanding of the pending motions. The defendants are partners in a limited partnership known as "Thornmar Farm", organized under the laws of Connecticut, with its principal place of business located in Greenwich, the residence of two of the partners, Thor and Martha. The remaining partner, Cynthia, resides at Thornmar Farm in Chestertown, Maryland. Thor and Cynthia are general partners while Martha is a limited partner. In April, 1972, the plaintiff, acting through its president, Douglas R. Small, Jr. agreed to sell the partnership a one-half interest in a brood mare known as "New Jimmys". The purchase agreement provided that plaintiff and the partnership would each have the right to stable and breed the mare during alternate years. In 1972, plaintiff bred New Jimmys while defendants did the same in 1973. In July, 1973, while the mare was in defendants' possession the parties agreed to insure the horse for $20,000 and to share equally the premium cost. Shortly after the insurance was secured the mare died. The defendants received the insurance proceeds but have refused plaintiff its one-half share alleging that plaintiff had failed to pay its share of the premium. Plaintiff then brought this action seeking to recover its share of the insurance.

Richard I. G. Jones, Robert W. Ralston, Prickett, Ward, Burt & Sanders, Wilmington, for plaintiff.

E. Norman Veasey, Allen M. Terrell, Jr., Richards, Layton & Finger, Wilmington, for defendants.

## OPINION

WALSH, Judge.

The plaintiff, Hibou, Inc., a Pennsylvania corporation, instituted this action by means of a writ of foreign attachment issued in accordance with 10 Del.C. § 3506 and Superior Court Civil Rule 4(b), Del. C.Ann. The property attached consists of certain shares of stock of Trident Oil Corporation, a Delaware corporation, regis-

Moving defendants have asserted several grounds in support of their motion to dismiss: (1) foreign attachment under 10 Del.C. § 3506 is violative of the due process clause of the Fourteenth Amendment

of the Federal Constitution; (2) plaintiff has failed to comply with the appropriate statutes and Court rules which govern attachments; (3) the partnership has not been properly served; and (4) the action should be dismissed under the doctrine of *forum non conveniens*. These arguments will be dealt with *seriatim*.

## I

Defendants argue that the Delaware foreign attachment procedure violates due process to the extent that it compels their appearance at the risk of forfeiting property rights without notice or opportunity to be heard. As a corollary to this contention defendants also assert that the underlying controversy in this case lacks the "minimal contacts" sufficient to permit the courts of this State to assert jurisdiction over them under the principles established in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Implicit in defendants' "minimal contacts" argument is the assertion that they risk *in personam* jurisdiction in this proceeding. These fears are clearly baseless. A proceeding in foreign attachment under 10 Del.C. § 3506 falls within the category of actions denominated *"quasi in rem"*. Standard Oil Co. v. Superior Court, Del.Supr., 5 Terry 538, 62 A.2d 454 (1948). In such a proceeding, absent a general appearance by the non-resident defendant, the Court does not acquire personal jurisdiction over the defendant, since its power extends only to the property which is placed *in custodia legis*. First Western Financial Corporation v. Neumeyer, Del. Super., 240 A.2d 579 (1968); Blaustein v. Standard Oil Co., Del.Super., 5 Terry 145, 56 A.2d 772 (1947); Woolley Del.Practice § 1270. The minimal contacts doctrine has been rejected as effecting the validity of a *quasi in rem* proceeding initiated under the Delaware sequestration statute (10 Del.C. § 366). Breech v. Hughes Tool Company,

Del.Supr., 41 Del.Ch. 128, 189 A.2d 428 (1963); United States Industries, Inc. v. Gregg, D.C.Del., 348 F.Supp. 1004 (1972). It can be argued that the Delaware sequestration procedure is generally applied as an ancillary measure in litigation involving corporations chartered in this State while a writ of foreign attachment authorizes seizure of a *res* wholly unrelated to the underlying litigation, but a delimiting construction of the attachment statute was expressly rejected in favor of inclusion of "non-resident plaintiffs and foreign causes" in Standard Oil Co. v. Superior Court, *supra*. Thus, even though this case has no relation to the property attached—shares of a stock of Trident Oil Corporation, the property does have its situs in this State by virtue of 8 Del.C. § 169 and is within the jurisdiction of the Court. Its seizure subjects the defendants to such jurisdiction, however, only to the extent of their property interest. That the property interest exceeds the amount of the claim does not vitiate the principle of *quasi in rem* jurisdiction.

Defendants principal attack upon the attachment statute is premised upon the force of two recent decisions of the United States Supreme Court which have struck down State-authorized summary seizure procedures as destructive of property rights guaranteed by the Federal Constitution. These decisions, Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972) bear analysis.

In *Sniadach* the Supreme Court struck down a Wisconsin statute which permitted pre-judgment garnishment of wages of a resident who was amenable to State Court personal jurisdiction. The Court was careful to distinguish the garnishment of wages from other types of attachments which enable a State Court to secure jurisdiction—"clearly a most basic and important public interest" (407 U.S. 91, 92 S.Ct. 1999). Significantly in *Sniadach*, the Supreme Court cited with approval Ownbey

v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921), in which the Court rejected an attack on the constitutionality of Delaware's foreign attachment statute. *Ownbey's* relationship with Delaware was, at best, tenuous since it involved a suit by non-resident plaintiffs against a non-resident defendant arising out of employment activities in Colorado and New Mexico. The Court recently cited *Ownbey* once more for the proposition that pre-judgment attachment is not constitutionally offensive when used as a method of initiating jurisdiction. Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). In *Mitchell,* the Court also noted that its decision in *Fuentes* was premised upon the principle that repossession of sold goods without judicial order, approval or participation lacked procedural due process. By contrast, in *Mitchell* the Court sustained a Louisiana sequestration statute requiring judicial intervention which insured that the defendant "was not at the unsupervised mercy of the creditor and court functionaries".

■ The procedural framework in which the Delaware foreign attachment statute operates contemplates judicial control as well as a full opportunity for the property owner-defendant to assert defenses. Both the statutory authority set forth in 10 Del.C. §§ 3501–3513 and Superior Court Civil Rules 4(b) and 12(b) provide the defendant with procedural safeguards which insure judicial inquiry before seizure and assertion of certain defenses without personal appearance after seizure. When so viewed, it is clear that the Delaware foreign attachment statute does not offend established standards of procedural due process.

## II

■ Defendants assail plaintiff's affidavit, submitted in support of its attachment petition, as failing to identify the property of the defendants (as required by Superior Court Rule 4(b)(1)(B)) and in particular the nature of defendants' interest. Paragraph (5) of the plaintiff's affidavit identifies the property as shares of common stock in Trident Oil Corporation, a corporation organized under Delaware law, estimates the value per share at $54.00, and states that "[T]he title of Thor H. Ramsing and Martha W. Ramsing is legal and equitable." The source of this information is given in paragraph (6), and reasons for not stating specifically the number of shares registered in the name of the defendants and the market value of the shares sought to be attached are stated at length in paragraph (7). The precise number of shares was supplied through an affidavit furnished by the Secretary of Trident Oil Corporation in answer to the attachment.

Read together, the information contained in these paragraphs renders the affidavit in compliance with the Rule. To adopt the statement of Chancellor Seitz in Lutz v. Boas, 38 Del.Ch. 563, 156 A.2d 96, 98 (1959), which dealt with identical requirements in Chancery sequestration procedure:

> "Obviously, if the plaintiffs were justified in saying that they did not know the number of shares owned by defendant they could not give the estimated value thereof."

Since plaintiff has given a reasonable explanation for not being able to ascertain to the specific number of shares registered in the names of the two defendants, it must be concluded that there has been substantial compliance with the Rule.

■ Defendants' argument that the attachment should be quashed because the value of the shares seized is disproportionate to the amount of the claim enjoys the benefit of hindsight. As already noted, the exact number and value of the shares was not known at the time the attachment issued and a reasonable explanation to that effect was offered to the Court. If the Court was satisfied in that regard the issuance of the writ was not a matter of dis-

cretion, plaintiff's entitlement was one of right. Breech v. Hughes Tool Co., *supra*. Defendants' complaint of disproportionate seizure is remediable either by a general appearance or through a motion to release such portion of the seized shares as will in no event be required to satisfy plaintiff's claim. Neither course has been pursued by defendants.

### III

█ The moving defendants also move to dismiss this action because there has not been effective service of process upon the partnership, Thornmar Farm, and the complaint does not state a cause of action against the partners as individuals. For purpose of disposition of this motion the allegations of the complaint must be accepted at face value. When so considered, the complaint asserts that Cynthia Ramsing, acting on behalf of the partnership received insurance proceeds belonging, in part, to the plaintiff. In retaining these funds Cynthia acted on behalf of the partnership whose individual members share legal responsibility for her acts. While it appears that plaintiff will be unable to effect service upon Thornmar Farm, as a partnership, since it does not do business in Delaware, service upon a single partner is sufficient to constitute service upon the partnership under the theory of partners being jointly and severally liable for partnership debts. Crane on Partnerships, Hornbook Series, Second Edition, Sec. 58, Diamond National Corp. v. Thunderbird Hotel, Inc., 85 Nev. 271, 454 P.2d 13 (1969); Magrini v. Jackson, 17 Ill.App.2d 346, 150 N.E.2d 387 (1958); Nay Aug Lumber Co. v. Stone, 131 Pa.Super. 122, 198 A. 918 (1938).

█ Service upon a partnership through an agent under a "common name" statute (10 Del.C. § 3904) is effective service upon the partnership *qua* partnership but such service is not essential to maintenance of an action where personal service upon a general partner is available. The latter method of service was effective at common law and common name statutes are designed to facilitate the securing of jurisdiction over partnerships not restrict it. Silliman v. DuPont, Del.Super., 302 A. 2d 327 (1972), affd., F. I. DuPont, Glore Forgan & Company v. Silliman, Del.Supr., 310 A.2d 128 (1973).

█ The fact that Cynthia Ramsing, the other general partner, is a non-resident and apparently not subject to personal service or *quasi in rem* jurisdiction does not deprive the Court of jurisdiction to render judgment against the partnership. Joint obligors who are non-residents and not subject to service are merely conditionally necessary parties. Scott v. Kay, Del. Supr., 227 A.2d 572 (1967). Even though Thornmar is a Connecticut Limited Partnership this result is consistent with the provisions of the Uniform Partnership Act (6 Del.C. Ch. 15) and the Limited Partnership Act (6 Del.C. Ch. 17) both of which consider service upon a general partner sufficient service upon the partnership.

█ The limiting scope of foreign attachment jurisdiction superimposed upon the nature of a limited partnership, however, require a distinction to be made between the jural status of the moving defendants. As previously noted Thor Ramsing one of the moving defendants is a general partner while Martha Ramsing is a limited partner. This distinction is significant for even if the Court has acquired jurisdiction over the partnership it does not necessarily follow that it has thereby acquired personal jurisdiction over a limited partner through seizure of personal assets unrelated to that limited partner's partnership contribution.

█ The law of foreign attachment limits any judgment in default of a defendant's appearance to the property in *custodia legis* and is not enforceable against a defendant generally. The Court, of course, does not adjudicate the merits of the claim

in foreign attachment cases before a defendant's appearance but on a motion to quash the order the Court as required by 10 Del.C. § 3506 must look at the *prima facie* case presented to ascertain whether the plaintiff has "a good cause of action" against all the defendants whose property has been attached.

■ The complaint conceded Martha's status as a limited partner and thus tacitly recognizes that her liability is limited to her contributed capital. Her general assets, including her interest in the attached shares of stock are not subject to claims of any creditor including plaintiff. The status of a limited partner has been held similar to that of a corporate stockholder. Barrett & Seage, Partners and Partnerships, Ch. XIII; In re Ira Haupt & Co., 2d Cir., 343 F.2d 726 (1965). To permit those shares to be attached as a means of acquiring jurisdiction with the penalty for nonappearance being the loss of personal assets which the plaintiff admittedly could not claim under a judgment secured on the merits of the complaint leads to a strange result. Such result would render the attachment statute a substantive tool for seizure of property in the absence of a valid underlying cause of action. When so employed the constitutionality of the statute would be open to serious question.

■ The complaint does not disclose on its face a claim against Martha W. Ramsing other than in connection with a claim against Thornmar Farms. There appears, therefore, no cause of action to justify attachment of the shares of stock in Trident Oil Corporation belonging to Martha W. Ramsing. Accordingly, that portion of the Order of Foreign Attachment applicable to Martha W. Ramsing is quashed.

## IV

■ Defendants also seek dismissal of this action on the ground of *forum non conveniens* and points to the diverse jurisdictional pattern of the parties and the controversy. Plaintiff is a Pennsylvania corporation; defendants reside in Connect- the contractual dispute is that of Maryland or, possibly, New Jersey. Delaware's contact with the controversy is limited to the situs of the attached property.

■ The doctrine underlying disposition of a case where *forum non conveniens* is raised has been oft-stated. Basically, the matter is one addressed to the discretion of the Court with the caution that dismissal be granted only in rare cases where factors overwhelmingly favor the defendant. States Marine Lines v. Domingo, Del.Supr., 269 A.2d 223 (1970); United Engines, Inc. v. Sperry Rand Corporation, Del.Supr., 269 A.2d 221 (1970); General Foods Corporation v. Cryo-Maid, Inc., Del.Supr., 41 Del.Ch. 474, 198 A.2d 681 (1964). An important, if not controlling, factor is the pendency of an action involving the parties or touching the dispute in another forum. There is no indication that another action pends in any other of the several jurisdictions in which the parties reside or do business. Thus, the plaintiff having chosen its forum should not be denied the right to proceed where other satisfactory alternatives do not exist, even where the forum's connection is based on the situs of seized property.

In summary, the Court holds that Martha W. Ramsing is not a proper party to this action and the property belonging to her is released from attachment. With respect to Thor H. Ramsing and the partnership of Thornmar Farms the plaintiff has sufficiently complied with the attachment statute; the partnership has been served; the attachment procedure is not unconstitutional and there is no sufficient basis for the Court to exercise its discretion to disturb plaintiff's choice of forum.

It is so ordered.