Jack J. GRYNBERG, Celeste C. Grynberg, Celeste C. Grynberg as sole trustee for Rachel Grynberg, Stephen Grynberg and Miriam Grynberg, Celeste C. Grynberg and Dean Smernoff as co-trustees for Rachel Grynberg, Stephen Grynberg and Miriam Grynberg and Oceanic Holding Company, a Colorado Corporation, Plaintiffs,

v.

Gene E. BURKE, Marc Waucquez, William E. Foster, Wesley N. Farmer, Melvin M. Fenichell, Thomas J. Vogenthaler, Norman J. Singer and Oceanic Exploration Company, a Delaware Corporation, Defendants.

Court of Chancery of Delaware, New Castle.

Submitted March 22, 1978.

Decided May 16, 1978.

David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs.

R. Franklin Balotti, and Donald A. Bussard, of Richards, Layton & Finger, Wilmington, for certain individual defendants.

Edward B. Maxwell, II, of Young, Conaway, Stargatt & Taylor, Wilmington, and Steven M. Umin, of Williams & Connolly, Washington, D. C., for defendant Oceanic Exploration Co.

BROWN, Vice Chancellor.

On June 24, 1977 the United States Supreme Court handed down its decision in the landmark case of *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683. On September 9, 1977 certain of the individual defendants in this action, namely, Gene E. Burke, William E. Foster, Wesley N. Farmer, Thomas J. Vogenthaler and Norman J. Singer, moved to withdraw general appearances entered by them during December 1976. In addition, they seek an order which would permit them now to enter only a special appearance for the sole purpose of contesting the jurisdiction of this Court over them. The basis for the present application is the decision in *Shaffer v. Heitner, supra.*

This suit was filed in October 1976 and service of process was effected upon the aforesaid individual defendants by means of sequestration of their stock interests in the defendant Oceanic Exploration Company pursuant to 10 *Del.C.* § 366. A sequestrator was appointed and notification of the attachment given as to all except the defendant Singer. As to Singer, the initial sequestration effort was clouded by the use of an incorrect address. In November, however, Singer appeared in Delaware in connection with a special hearing being held concerning the propriety of then counsel for the defendants continuing to serve in the litigation. While here, Singer was served personally with process even though plaintiffs acknowledge that arguably at least he was immune from personal service under the circumstances.

Thereafter, in December 1976, by written stipulation of counsel, all of the aforesaid defendants entered a general appearance, in return for which the sequestration order was vacated and their stock interests released from further Court process. Also by written stipulation filed a few days later it was agreed that another defendant, Marc Waucquez, a Belgian national and one of the trustees in the voting trust which the complaint seeks to set aside, would enter a special appearance as trustee, thereby limiting his potential liability to the *in rem* issues only. Plaintiffs apparently agreed to this because Waucquez had indicated an intention to challenge the validity of the sequestration of his property interests, an involvement plaintiffs wished to avoid in the hope of moving the matter toward an early trial. In keeping with the foregoing stipulated appearances, none of the individual defendants moved to challenge jurisdiction in any way prior to the announcement of the decision in *Shaffer v. Heitner.*

The issue in *Shaffer* dealt specifically with the sequestration of nonresidents' stock in a Delaware corporation pursuant to 10 *Del.C.* § 366 for the purpose of coercing such nonresidents to enter general appearances in litigation commenced against them in this forum. Compare *Sands v. Lefcourt Realty Co.,* Del.Supr., 117 A.2d 365 (1955). In its decision the United States Supreme Court held, however, that this Court's exercise of *in rem* or *quasi in rem* jurisdiction premised on the presence of a nonresident's

property in Delaware must nonetheless satisfy the same minimum contacts test as required for *in personam* jurisdiction under *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) in order to comport with constitutional due process. It is here conceded that the individual defendants, all of whom are nonresidents, lack the necessary minimum contacts with Delaware that would provide the basis for an exercise of jurisdiction over them.

Plaintiffs consider this to be an irrelevant factor at this point since they view the voluntary entry of general appearances to have been a waiver by defendants of any right to challenge the sufficiency of service of process thereafter. Defendants say, however, that at the time they entered their general appearances it had not been judicially determined that they had a constitutional right to resist jurisdiction under sequestration where adequate minimum contacts with Delaware were lacking. Thus they say that they could not have knowingly waived a right that had not yet been declared to exist at the time that they agreed to enter their general appearances in order to obtain a release of their sequestered property.

The question for decision may thus be stated as follows: Did these nonresident defendants, by entering general appearances which released their Delaware property from a sequestration order, thereby waive their right to challenge the constitutionality of the sequestration as to them when, as of the time of their decision to enter the general appearances, their constitutional right to resist such process based upon insufficient contacts with Delaware had not been judicially declared to exist? I conclude that this question must be answered in the negative, but subject to the qualification set forth hereafter.

## I.

■ At the outset I take note that the defendants argue in their brief that they should be permitted to withdraw because their general appearances were compelled by, and thus a consequence of, an unconstitutional statute. I find this argument without merit based upon my understanding of *Shaffer*. I cannot agree, as defendants suggest, that *Shaffer* struck down the Delaware sequestration statute. Rather, I understand *Shaffer* to hold that an attempt to assert *quasi in rem* jurisdiction under 10 *Del.C.* § 366 is constitutionally defective if, in the particular situation, there are insufficient contacts existing between the nonresident defendant and this State to provide a fair basis for the exercise of the jurisdiction authorized by the statute. Stated another way, since *Shaffer* held that in that case there were insufficient minimum contacts to satisfy the requirements of constitutional due process, and that consequently the service of process by sequestration there was insufficient to bring the nonresident defendants within the jurisdiction of this Court, then as a necessary corollary it would seem that in a case where an abundance of contacts are present service of process under § 366 would not violate constitutional due process, and that consequently it would be proper to attach property interests located in Delaware as a means to coerce a nonresident defendant to appear and defend the action on its merits. Also, the Delaware Supreme Court recently has given at least tacit recognition of the continued validity of § 366 as a jurisdictional tool where sufficient minimum contacts clearly exist.*

---

* In *Melville v. Wilmington Trust Company, et al.*, Nos. 79 and 97, 1977, an appeal from this Court in a case contesting service by sequestration under § 366, the Supreme Court, in affirming by Order dated April 10, 1978, stated in part as follows:

  "(7) Plaintiff concedes that under the opinion of the United States Supreme Court in *Shaffer v. Heitner*, [433 U.S. 186,] 97 S.Ct. 2569 [53 L.Ed.2d 683] (1977), reversing *Greyhound Corporation v. Heitner*, Del.Supr., 361 A.2d 225 (1976), it is obliged to meet the minimum contacts test to support jurisdiction over defendant. Plaintiffs contend that the record factually establishes that such test has been met. Defendants did not refer to *Heitner* in their briefs, nor did they rely on it at oral argument. For that reason, the Court does not regard *Heitner* as being argued as a basis for reversal."

## II.

The real issue then deals with the waiver of a right or immunity afforded by the Constitution of the United States as interpreted by *Shaffer v. Heitner.* In *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1937), in speaking in the context of constitutional rights, the United States Supreme Court stated that "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Starting with this premise the parties cite and argue various federal decisions dealing with waiver, or the absence thereof due to insufficient knowledge or lack of representation at the time of the act purporting to constitute the waiver. These cases, however, tend to deal with the constitutional rights of criminal defendants under the Sixth Amendment and, as plaintiffs point out, the more recent decision in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1974) warned that the line of cases springing from *Johnson v. Zerbst* is not to be blindly followed in other than Sixth Amendment cases. As stated in *Schneckloth* at 412 U.S. 235, 237, 93 S.Ct. 2052:

> "With respect to procedural due process, for example, the Court has acknowledged that waiver is possible, while explicitly leaving open the question whether a 'knowing and intelligent' waiver need be shown.
>
> \* \* \* \* \* \*
>
> "Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial."

As a consequence, I am inclined to base the decision here on the discussion of the waiver issue in *Curtis Publishing Company v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). First, however, I shall summarize the contentions of the parties.

Plaintiffs urge several factors in support of their position that a waiver as to jurisdiction has taken place. They point out that the same Delaware law firm representing the individual defendants here also represented the nonresident defendants who appealed to the United States Supreme Court in *Shaffer v. Heitner,* and that long before the entry of the stipulated general appearances here a jurisdictional statement had been filed in *Shaffer* in which it was made clear that the constitutional invalidity of the Delaware sequestration process was being asserted. In this Court, where the *Shaffer* case had been commenced by sequestration, the present defendants' same Delaware law firm had moved to challenge the sequestration of the nonresident defendants' stock interests and had thus preserved their right to attack jurisdiction. Yet that same law firm saw fit not to do so for the individual defendants here.

The record also reveals that the moving defendants here were aware, as of the time they entered their general appearances, that they possessed the right under Delaware law to challenge the validity of the sequestration process without subjecting themselves to *in personam* jurisdiction, that the sequestration process had been declared unconstitutional by the United States Court of Appeals for the Third Circuit in June 1976 in *U. S. Industries, Inc. v. Gregg,* 540 F.2d 142 (3rd Cir. 1976) on the facts therein presented, and that the United States Supreme Court had noted probable jurisdiction in *Shaffer.* Plaintiffs also point to defendants' necessary knowledge that Waucquez had been permitted to enter a special appearance so as to avoid a challenge of the sequestration process by him, and that Singer had chosen to enter a general appearance even though he had an additional premise on which to attack jurisdiction due to a possible immunity from personal service.

Based upon these factors, plaintiffs find it inconceivable that the individual defendants did anything other than to knowingly waive all right they might have had to attack the service of process and to thereby voluntarily submit themselves to the jurisdiction of the Court.

Defendants argue, however, that this approach fails to take into consideration the actual status of the law at the time. With the notable exception of *U. S. Industries, Inc. v. Gregg, supra,* (which itself reversed a contrary ruling of the Delaware District Court and which did not, as here, deal with the sequestration of the stock interests of directors and officers of a Delaware corporation), every decision which had considered the matter theretofore had upheld the validity of the Delaware foreign attachment and sequestration process. *Ownbey v. Morgan,* 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921); *Breech v. Hughes Tool Co.,* Del. Supr., 189 A.2d 428 (1963); *Gordon v. Michel,* Del.Ch., 297 A.2d 420 (1972); *Hibou, Inc. v. Ramsing,* Del.Super., 324 A.2d 777 (1974); *Wiley v. Copeland,* Del.Supr., 349 A.2d 211 (1975); and *The Greyhound Corporation v. Heitner,* Del.Supr., 361 A.2d 225 (1976). Thus they say that the fact that their counsel may have known of the constitutional arguments against sequestration is irrelevant. Counsel also knew that no court of this state had ever given any credence to such arguments. Nor could they be charged to anticipate that in *Shaffer* the United States Supreme Court would set aside the many years of law flowing from its prior decision in *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877). What counsel did know was that the defendants' sequestered property would likely remain tied up for a lengthy period in the event that such precedentially hopeless › arguments were once again urged upon this Court. Based upon this status of affairs, they argue that they should not be faulted for yielding to the clear weight of the law as it then stood and opting for the only course open to them to obtain an immediate release of their property rights.

Turning then to *Curtis Publishing Company v. Butts,* there, in answer to a defense of waiver, it was held that the failure to allege and assert a defense to a libel action based upon the First Amendment, when at the time there was no precedent supporting such a defense, did not bar the defendant, after suffering an adverse verdict, from moving for a new trial based upon such a constitutional defense which had been established shortly after the verdict by the decision of the United States Supreme Court in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Referring to *Johnson v. Zerbst, supra,* the Supreme Court emphasized that to constitute a waiver, there must have been a voluntary relinquishment of a known right which, presumably, could not have occurred before the right was declared to exist by the Supreme Court. Despite the possibility that bridging the gap in *Curtis Publishing Company* may have been facilitated by the Court's decision to support the verdict and resulting judgment even in the face of the defense born of *New York Times Co. v. Sullivan,* the fact remains that the decision of the United States Court of Appeals for the Fifth Circuit to deny the motion for new trial under the waiver theory was not approved.

It was also established as a fact in *Curtis Publishing Company* that certain attorneys representing its interests were also involved in representing the interests of the publisher in the pending appeal in *New York Times Co. v. Sullivan.* The Court of Appeals had found this significant, charging counsel for Curtis with notice of "the handwriting on the wall" as of the time Curtis failed to raise the constitutional defense in its litigation. The Supreme Court, however, rejected this overlap of counsel as a basis for finding a waiver, deeming it inadvisable to determine whether a constitutional right is known for purposes of deciding whether or not a failure to assert it constitutes a waiver "by relying on information outside the record concerning the special legal knowledge of particular attorneys." 388 U.S. 144, 87 S.Ct. 1986, 18 L.Ed.2d 1105.

Despite the attempt of plaintiffs to distinguish *Curtis Publishing Company* from the present situation on the theory that a substantive right was involved there as compared to a procedural matter in the present case, I am persuaded that the rationale of *Curtis* controls the decision on the pending motion, at least to a certain extent.

As in *Curtis,* the individual defendants here took a position which (a) failed to raise a constitutional objection (b) in the face of a dearth of legal authority which would support such a position (c) and at a time before the constitutional right had been judicially declared to exist, but (d) prior to the time that any judgment entered against them in violation of such constitutional right had become final. The knowledge of their attorneys as to the pendency and basis for the *Shaffer* appeal not being determinative under *Curtis,* and this case still being in the discovery stage prior to trial, I conclude that the individual defendants cannot be held to have waived the right to challenge the jurisdiction of this Court over them pursuant to process initiated under 10 *Del.C.* § 366 by the fact that they voluntarily entered general appearances under the conditions then existing.

### III.

At the same time I do not mean to imply that this holding automatically entitles the individual defendants to a dismissal of the complaint against them due to a lack of the essential minimum contacts with this forum. Indeed the motion itself does not go that far. Rather it asks that they now be entitled to enter a special appearance in order that they may contest jurisdiction under *Shaffer.* Thus the very form of the motion contemplates a special hearing or proceeding to determine whether the test of *Shaffer* and *International Shoe Company* has been met. And since the minimum contacts test necessarily includes factual determinations, it seems appropriate to view the nature of the proceeding they seek to be an evidentiary one.

Nor do I feel it to be dispositive that the plaintiffs have conceded, at least at this juncture, that the requisite minimum contacts do not in fact exist. This is particularly important where a potential waiver of insufficient process based upon the affirmative entry of a general appearance is the topic for consideration. As plaintiffs point out, defects in service of process are often deliberately waived for a variety of reasons.

Sometimes defendants find it convenient for their purposes to submit voluntarily to suit against them in a foreign jurisdiction. The ability to joint third-party defendants or to cross-claim against a co-defendant may be a factor. Avoidance of unpleasant publicity in one's home town, or perhaps, a more favorable body of law, or a desire to obtain a more speedy resolution on the merits in a jurisdiction having less of a judicial backlog may well influence a decision to waive defective process. In fact Chancery Rule 12(h)(1) recognizes these commonplace considerations by providing that defenses of lack of jurisdiction over the person and insufficiency of service of process are considered waived as a matter of course by the filing of a motion or responsive pleading which fails to assert them.

In other words, while I hold that the individual defendants here have not waived the right to challenge the jurisdiction of this Court over their persons I cannot accept at this point their naked assertion that their only reason for choosing to enter a general appearance was because of their desire to obtain a release of their property interests from the effect of the sequestration order. As yet there is nothing in the record of which I am aware that would support such a finding. And since these defendants now seek to avoid their affirmative act of entering the general appearances, and to do so based on the *Shaffer* decision, the burden of demonstrating that this was the sole motivation for their conduct, as opposed to other equally plausible considerations, should be theirs to establish.

This approach is made more compelling when the special appearance entered by Waucquez and the additional factors pertaining to Singer are recalled. In short, while the burden may not necessarily be upon nonresident defendants to affirmatively establish the absence of minimum contacts now in a post-*Shaffer* suit initiated under *in rem* or *quasi in rem* process, I feel it only fair to require them to demonstrate their entitlement to rely on the right created by *Shaffer* under circumstances such as exist here.

## IV.

Having arrived at the foregoing determination, I also deem it unwise to grant the precise relief requested by the pending motion. This result is dictated by practical considerations. Because of the general appearances, the property interests of these defendants have been released from attachment. Assuming the obvious, namely, that it is unlikely that they could be reattached under the minimum contacts test, then to permit them to withdraw their general appearances now as a part of allowing them to challenge jurisdiction specially could arguably leave the Court with no personal jurisdiction over these defendants even if it was later determined that they had waived their right to rely on the *Shaffer* decision. In a case already pending for a considerable time, and in view of the discovery and preparation that has already taken place, I see no need to take the risk of promoting further pretrial controversy.

Accordingly, the motion to withdraw the general appearances and to enter special appearances for the purpose of contesting jurisdiction is denied, without prejudice, however, to the right of these defendants, through an appropriate application, to establish an evidentiary basis on which to justify an order dismissing the complaint as to them due to a lack of personal jurisdiction despite their collective entry of a general appearance. An appropriate form of order may be submitted.