Mervyn TUCKMAN, Plaintiff,

v.

AEROSONIC CORPORATION, a Delaware Corporation, Artko Corporation, a Delaware Corporation, Sol Kotz, Herbert J. Frank, A. L. Ben-Mayor, Philip Stapp, Stanley Grayson, Ken Foulk, Lawrence Friedman, Howard Oseran, Mrs. Ann Doss, Charles F. Burley, Abraham E. Cohen, Harris E. Long, Laventhol Krekstin Horwath & Horwath, Saclarides, Campas and Mink, and Horwath & Horwath, Defendants.

Court of Chancery of Delaware, New Castle County.

Submitted July 13, 1978.

Decided Sept. 11, 1978.

Thomas G. Hughes, of O'Donnell & Hughes, P. A., Wilmington, and James M. Richardson, of Spector, Cohen, Hunt & Rosen, Philadelphia, Pa., for plaintiff.

Steven J. Rothschild, and Steven M. Gevarter, of Prickett, Ward, Burt & Sanders, Wilmington, for defendant-Frank.

HARTNETT, Vice Chancellor.

One of the individual defendants, Herbert J. Frank, moved to dismiss this action, as to him, for lack of this Court's jurisdiction over him and insufficiency of service of process upon him. The issue before me is whether defendant-Frank has waived his right to challenge a jurisdictional defect established as the result of *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), a decision handed down after Frank had entered his general appearance in this action.

The present suit was filed on January 13, 1973, by plaintiff against corporate defendants Aerosonic Corporation and Artko Corporation, (both of which are incorporated in Delaware), certain present or former directors of Artko, three accounting firms and defendant-Herbert J. Frank (Frank), who is the President of Aerosonic.

On January 15, 1973, upon plaintiff's application, a Sequestration Order was entered pursuant to 10 *Del.C.* § 366.[1] In compliance with that Order 315,952 shares of Aerosonic stock owned legally and beneficially by Frank were seized. Frank, by special appearance, then moved to quash, vacate and dismiss the Sequestration Order and Writ issued on the Order. Following the denial of Frank's Motion, which did not challenge the constitutionality of the statute under the authority of which his stock was seized, Frank filed an Answer and thereby entered a general appearance on July 19, 1976.

In *Shaffer v. Heitner*, supra, which was handed down on June 24, 1977, the United States Supreme Court held that the provisions of 10 *Del.C.* § 366 (the Delaware Sequestration Statute) were unconstitutionally used to confer in personam jurisdiction in this Court over a nonresident defendant where the defendant's necessary minimum contacts with Delaware were absent.[2] On September 20, 1977, at least 82 days after learning that *Shaffer* might provide grounds for dismissal of this action against him, Frank moved for dismissal of this suit on the basis of that heralded decision.[3] During that period, Frank took the following discovery related actions:

1. On July 5, 1977, Frank forwarded to plaintiff his Answers to Interrogatories which had been propounded prior to the *Shaffer* decision; and

2. On July 27, 1977, Frank sent plaintiff copies of certain documents which had been previously withheld as privileged.

Production of these documents followed plaintiff's motion to compel production of the documents and a request for sanctions which were filed on January 11, 1977, although the record does not indicate that these documents were produced specifically in response to that motion.

Frank argues that he entered a general appearance in this action, in 1976 only because of this Court's order for the seizure of his substantial holdings in Aerosonic pursuant to the Sequestration Statute, a seizure similar to the seizure held to be unconstitutional in *Shaffer*. Therefore he urges that he should now be permitted to withdraw his appearance, which he claims was entered under financial coercion. Frank points to the fact that other individual defendants who had only nominal stock holdings in Aerosonic simply forfeited their shares rather than expose themselves to the possibility of in personam liability and that they, unlike himself, were not faced with the "Hobson's choice" of either defending this action or forfeiting valuable assets.

The relief sought by plaintiff is primarily for the return to Aerosonic of the majority of the 315,952 Aerosonic shares held by Frank and the return of $598,000 plus other sums and benefits received by Frank from Aerosonic for stock sold to the corporation by him.

1. 10 *Del.C.* § 366 is quoted in *Bank of America v. GAC Properties Credit, Inc., infra.* It provides a method for substituted service of process upon non-resident owners of stock in a Delaware corporation by causing a seizure of the stock to compel the appearance of the nonresident.

2. More recently, in *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), the Supreme Court expanded its minimum contacts test by placing added emphasis on the "fairness" of entering an in personam judgment against a nonresident de-

fendant, the essential criterion being whether the quality and nature of a defendant's activity is such that it is both reasonable and fair to require that he conduct his defense in that State. 436 U.S. at 102, 98 S.Ct. at 1702, 56 L.Ed.2d at 141. The Court recognized that such a determination can be made only on the facts of each case.

3. On June 29, 1977, Frank's counsel indicated to the Court that he was aware of *Shaffer v. Heitner*, supra, and would be re-evaluating his position in the light of that decision.

In the unreported decision of *Bolger v. Northern Lumber Co.,* Del.Ch., N.C. (C.A. 5328, April 13, 1978) this Court held, in an action for the cancellation of shares of stock, that when the validity of the issuance of stock is questioned the mere fact that a nonresident owns stock in a Delaware corporation is not sufficient to support substituted service of process on the nonresident pursuant to 10 *Del.C.* § 365.[4]

Thereafter, in *Arden-Mayfair, Inc. v. Louart Corporation,* Del.Ch., 385 A.2d 3 (1978), a plaintiff sought a decree relating to the status and ownership rights of corporate stock having its situs in Delaware. In dismissing the action in which jurisdiction was obtained under 10 *Del.C.* § 365, this Court in interpreting the *Shaffer* decision stated:

> Strangely enough, this seems to indicate that even the physical presence of property in a state, be it real or personal property, will no longer, standing alone, support *in rem* jurisdiction for an action related to the rights and duties arising out of its ownership. It must naturally follow that where the presence of the property is fictional rather than actual, the basis for *in rem* or *quasi in rem* jurisdiction is no stronger.

> Applying the foregoing to the present situation, the sole connection of the Louart defendants with this forum is that they are the owners of corporate stock which, by statute, has its fictional (and quite legal) situs in Delaware. In addition, the action as to which their involvement is sought concedes the Louart defendants' ownership of the stock and seeks only to determine the voting rights of Arden-Mayfair stock at an annual election of directors as such rights may or may not be affected by the California statutes on which the Louart defendants rely. However, neither this latter factor nor the present status of the record suggests any of the nebulous "other ties" which have now become so vital to the ability of a state to supervise property

rights which exist by virtue of its sovereignty. 385 A.2d at 6.

As was the case in *Bolger* and *Arden-Mayfair,* Frank's sole contact with Delaware was his ownership of stock in a Delaware corporation. Although in the instant action jurisdiction was obtained under 10 *Del.C.* § 366 rather than § 365, the principle of law is the same—there must be greater minimum contacts with Delaware than the mere ownership of stock in a Delaware corporation to support the jurisdiction of this Court over a nonresident defendant where service of process over him is obtained by substituted service. Here, there were no other contacts by Frank whatsoever and dismissal of the action as to him, in the absence of the entry of a general appearance, would have been warranted under the rule of law laid down in *Shaffer.*

## II

This leads to the dispositive issue of Frank's Motion To Dismiss: "Did Frank waive his constitutionally proclaimed right to dismissal of the action against him?"

Numerous cases support Frank's position that due process rights cannot be waived unless there is a knowing and voluntary waiver. Waiver has been defined by the U. S. Supreme Court as "an *intentional* relinquishment or abandonment of a *known* right or privilege," *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (emphasis added). The Court further pointed out in that case that courts should grant every reasonable presumption against waiver of fundamental constitutional rights. See also *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); *Muniz v. Beto,* 434 F.2d 697 (5th Cir. 1970); *Shoffeitt v. United States,* 403 F.2d 991 (5th Cir. 1968).

Those cases, however, dealt with the rights of criminal defendants, and as noted in *Schneckloth v. Bustomonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973):

---

4. 10 *Del.C.* § 365 is quoted in *Winitz v. Kline,* Del.Ch., 288 A.2d 456 at 461 (1971). It provides for substituted service of process in in rem proceedings where the property is located in Delaware.

Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial. 412 U.S. at 237, 93 S.Ct. at 2052.

Notwithstanding the Court's language in *Schneckloth,* which seemingly limits the requirement of a knowing and intelligent waiver to Sixth Amendment cases, the fact remains that the *Johnson v. Zerbst* definition and test of waiver has been used in civil cases as well.

For example, in *Chambers & Co. v. Equitable Life Assur. Society,* 224 F.2d 338 (5th Cir. 1955), it was held that an insurance company had not waived its rights under a contract by the acceptance of a stand-by fee because it had never intended to waive the time limit for performance of the contract, the Court stating:

> The right, privilege or advantage allegedly waived must be in existence and be known to exist by the party possessing it, and this party must intentionally and voluntarily relinquish such right, advantage or benefit. 224 F.2d at 345.

See also *Compania Constructora Bechtel-McCone, S. A. v. McDonald,* 157 F.2d 749 (9th Cir. 1946), holding that the defendant corporation did not waive its right to fire an employee whom it had ordered to return to work because the company did not know all of the facts of the employee's prior insubordination.

The leading case on the question of waiver in civil cases, and indeed one which is closely analogous to the case at bar, is *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In that case it was held that the failure of the defendant, in a libel action brought by a public figure, to raise constitutional defenses did not constitute a knowing waiver of those defenses where: (1) the decision in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) supporting the defenses of freedom of speech and freedom of the press in libel actions brought by public officials was not handed down until trial was completed and it was not unreasonable on the basis of existing law to fail to assert those defenses; and (2) because the newly established constitutional defenses were *promptly* raised by a motion for a new trial. The Court again cited the doctrine of *Johnson v. Zerbst,* supra, stating that "an effective waiver must . . . be one of a 'known right or privilege'." 388 U.S. at 143, 87 S.Ct. at 1985.

■ Defendant's contention that the lack of the in personam jurisdictional defense now asserted by him was not viable until *Shaffer* is certainly meritorious. Despite many challenges to the constitutionality of Delaware's sequestration and foreign attachment procedure, see, e. g., *Ownbey v. Morgan,* 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921); *The Greyhound Corporation v. Heitner,* Del.Supr., 361 A.2d 225 (1976); *Wiley v. Copeland,* Del.Supr., 349 A.2d 211 (1975); *Breech v. Hughes Tool Co.,* Del. Supr., 41 Del.Ch. 128, 189 A.2d 428 (1963); *Gordon v. Michel,* Del.Ch., 297 A.2d 420 (1972), until Shaffer the validity of those statutes was, with two exceptions,[5] uniformly upheld. Thus, as in *Curtis Publishing Co. v. Butts* in which the Court held that defendants could not be held to have knowingly waived a defense which was not established until after a decision rendered after their trial, Frank cannot be held to have waived the defenses of lack of jurisdiction and invalid service of process until after *Shaffer* struck down a long and imposing line of precedents which formerly would have precluded the success of his present motion. See *Grynberg v. Burke,* Del.Ch., 388 A.2d 443 (1978), in which Vice Chancellor Brown, on the issue of whether nonresident defendants waived a jurisdictional defense, held that *Curtis Publishing*

---

5. In *U. S. Industries, Inc. v. Gregg,* 540 F.2d 142 (3rd Cir. 1976), a decision of the District Court was reversed and it was held that sequestration pursuant to 10 *Del.C.* § 366, absent minimum contacts, was unconstitutional. *Barber-Greene Co. v. Walco National Corp.,* 428 F.Supp. 567 (D.Del.1977) held that application of 10 *Del.C.* § 365 was unconstitutional without the necessary minimum contacts.

*Co.* was controlling to the extent that the individual defendants:

(a) failed to raise a constitutional objection, (b) in the face of a dearth of legal authority which would support such a position, (c) and at a time before the constitutional right had been judicially declared to exist, but (d) prior to the time that any judgment entered against them in violation of such constitutional right had become final.

The Vice Chancellor therefore decided that defendants could not be held to have waived the right to challenge the Court's jurisdiction obtained "over them pursuant to process initiated under 10 *Del.C.* § 366 by the fact that they voluntarily entered general appearances under the conditions then existing".

### III

"Waiver is a question of ultimate fact rather than of law". *Michener v. Johnston,* 141 F.2d 171, 175 (9th Cir. 1944). Having found that Frank did not knowingly and voluntarily waive the right to challenge jurisdiction by entering a general appearance in 1976, I now must turn to the facts which plaintiff contends require a holding that Frank, in 1977, waived his right to assert these defenses by failing to promptly raise them.

Plaintiff asserts that by complying with discovery requests following knowledge of *Shaffer,* Frank affirmatively participated in this case in a manner inconsistent with a Motion To Dismiss on jurisdictional grounds and thereby waived the defenses made available by *Shaffer.* Frank counters this contention by pointing out that his participation in discovery after *Shaffer* was handed down—which as noted earlier consisted of forwarding answers to interrogatories and producing certain documents—was merely in response to discovery outstanding before *Shaffer* was decided and that Frank did not initiate any discovery on his own behalf during this time.

In *Nacci v. Volkswagen of America, Inc.,* Del.Super., 297 A.2d 638 (1972), the issue confronting the Court was whether defendants forfeited their right to raise a defense of lack of jurisdiction over the person by either executing a Stipulation extending the time for "filing motions, an answer, or otherwise pleading", or by participating in depositions which were initiated by non-moving defendants. The Court held that such participation, which included examining and cross-examining witnesses, did not constitute a waiver of the Rule 12(b) defense and stated:

While there is logic in forbidding a party from proceeding with the merits of a case, while his challenge to the jurisdiction of the Court is pending, the Rules make no such provision. The Rules were designed, in part, to get away from the systematic progression of common law pleading, and the conclusion is that the systematic progression to which I have alluded has given way to a policy of not barring discovery, subject, of course to judicial discretion, even during pendency of issues which might ultimately dispose of the litigation without reaching the merits. There is no showing that plaintiff's position in the case has been prejudiced by defendants' participation in the depositions or that plaintiff has been misled thereby.

Rule 12 contemplates defenses by parties, and I find nothing in the Rule to compel an election between participating in discovery initiated by another party and asserting defenses under Rule 12(b). Accordingly, I hold that defendants' participation in depositions which they did not initiate was not a waiver of the Rule 12(b) defense of lack of personal jurisdiction. 297 A.2d at 640 (citations omitted)

█ Plaintiff urges that the facts in the instant case are distinguishable from those in *Nacci* because in *Nacci* the Motion To Dismiss was pending when defendants participated in the discovery proceedings, that the discovery was instigated by other defendants rather than plaintiff, and that the discovery did not relate to those defendants who filed the motion. However, I am convinced that the emphasis plaintiff has placed on these factual distinctions mistak-

enly limits *Nacci*. First, the express holding in *Nacci* is that absent prejudice to the non-moving party, Rule 12 does not compel an election between responding to discovery initiated by another party and asserting Rule 12(b) defenses. The decisive fact to be determined, therefore, is whether the moving party initiated any discovery prior to the motion to dismiss and not, as plaintiff insists, whether non-moving defendants rather than plaintiff took the initiative. I also find it of no consequence that, unlike *Nacci*, Frank in the instant action had not yet filed a Motion To Dismiss when he complied with plaintiff's discovery requests inasmuch as such requests were made prior to the *Shaffer* decision and thus before such a motion became truly viable.

█ Indeed, there are facts present in the case which make it distinguishable from *Nacci* to Frank's advantage. First, in *Nacci* defendants took a far more active role in the discovery process than merely forwarding interrogatories and documents in that they actually examined witnesses themselves. Second, in the present case Frank was confronted with a motion for production of documents and sanctions. Therefore, I find that Frank did not waive the defenses of lack of personal jurisdiction and insufficiency of process by his response to plaintiff's discovery.

### IV

Finally, plaintiff contends that the 82 day lapse of time between when Frank knew of the implications of the *Shaffer* decision and Frank's Motion To Dismiss should be interpreted as a waiver by Frank of this Rule 12(b) defense. Contrary to Frank's assertion, two previous decisions by this Court

which dealt with the issue of waiver of 12(b)[6] defenses did not address the effect of a delay in raising such defenses. *Bank of America National Trust and Savings Assoc. v. GAC Properties Credit, Inc.*, Del.Ch., 389 A.2d 1304 (1978); and *Grynberg v. Burke*, supra.

In *Curtis Publishing Co. v. Butts*, supra, the U. S. Supreme Court noted that "it is equally clear that even constitutional objections may be waived by a failure to raise them at a proper time", 388 U.S. at 143, 87 S.Ct. at 1985, and found that defendant's presentation of the constitutional issue was prompt.

█ In order to decide whether an 82 day delay was an unreasonable delay and accordingly a waiver of a constitutional defense, it is necessary to examine, by analogy, the time limits and procedures required under Rule 12 of the Rules of this Court. Under Rule 12(h) the defenses of lack of jurisdiction over the person and insufficiency of process are waived unless raised by motion before pleading or included in a responsive pleading.[7] Thus a Rule 12(b) defense, if available at the time, is waived, even if set forth in the answer, if it was not included in a Rule 12 motion filed before the answer. Wright & Miller, *Federal Practice and Procedure*, Civil § 1391. See *Varone v. Varone*, 392 F.2d 855 (7th Cir. 1968); *Graff v. Nieberg*, 233 F.2d 860 (7th Cir. 1956).

█ The purpose for this rule is to expedite litigation and encourage disputes to be resolved on their merits. Wright & Miller, supra, Civil § 1342.

---

**6.** Rule 12(b) states *inter alia:*

"Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (2) lack of jurisdiction over the person, . . . (4) insufficiency of process, . . . A motion making any of these *defenses* shall be made before pleading if a further pleading is permitted. . . ."

**7.** Rule 12(h)(1) states:

WAIVER OF DEFENSES.

(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or *insufficiency of service of process is* waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this Rule nor included in a responsive pleading or *an amendment thereof permitted by Rule 15(a)* to be made as a matter of course.

Rule 12(a) requires that an answer be served within 20 days of service of the complaint on defendant unless the time for answering is extended, and therefore, under normal circumstances a defendant would be held to have waived the defenses of lack of jurisdiction over the person and insufficiency of process if the defenses had not been raised in the answer or by motion before service of the answer. In either event, whether raised by motion or pleading, the maximum time allowed would have been 20 days from service of the complaint on a defendant. *Alger v. Hayes,* 452 F.2d 841 (8th Cir. 1972); *Standard Oil Co. v. Montecatini Edison S.p.A.,* 342 F.Supp. 125 (D.Del. 1972); Wright & Miller, supra, Civil § 1390–1393: 2A Moore *Federal Practice* (2d Ed.) § 12.23, pp. 2446–2463.

However, because *Shaffer* was not decided until long after all the pleadings had been filed, the defenses contained in Frank's motion were unavailable at the time his answer was filed. Unavailable defenses are not waived until available. Wright & Miller, supra, Civil § 1388; *Printing Plate Supply Co. v. Curtis Publishing Co.,* 278 F.Supp. 642 (E.D.Pa.1968). The question arises, therefore, of how long should a defendant be given to raise a Rule 12(b) defense, not available at the time the answer was filed. Policy dictates that promptness be required. See *Grier v. Tri-State Transit Co.,* 36 F.Supp. 26 (W.D.La. 1940). If Frank is now permitted to raise the Rule 12(b) defenses of lack of personal jurisdiction and insufficiency of process 82 days after they became available by virtue of *Shaffer,* and known to him, he would in essence receive a benefit which he could not have obtained had *Shaffer* been decided before the suit was instituted. If the defenses had been available at the time the suit was filed, Frank would have had a maximum of 20 days to raise these defenses or be deemed to have waived them. Of course, relief against the 20 day limitation is available in special circumstances. See Rule 6 or 60. But Frank has shown no reason for his delay in filing his Motion To Dismiss although it is clear that he knew of the implications of *Shaffer* at least 82 days before his Motion was filed.

I hold, therefore, that Frank's Motion To Dismiss was not timely and that his failure to assert the defenses promptly resulted in a waiver. Accordingly, Frank's Motion To Dismiss is denied.

So ordered.