**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION et al., Plaintiffs,**

v.

**GAC PROPERTIES CREDIT, INC., et al., Defendants.**

**Leo W. FARLAND, Plaintiff,**

v.

**S. Hayward WILLS et al., Defendants.**

Court of Chancery of Delaware, New Castle County.

Submitted March 30, 1978.

Decided June 26, 1978.

---

A. Gilchrist Sparks, III, Morris, Nichols, Arsht & Tunnell, Wilmington, Attorneys for Plaintiff Bank of America National Trust and Savings Association, Russell J. Willard, Jr., Hastings & Willard, Wilmington, Stanley Nemser, Nemser & Nemser, New York City, for plaintiff Leo W. Farland.

Martin I. Lubaroff, Richards, Layton & Finger, Wilmington, for intervening plaintiff Chemical Bank.

Michael D. Goldman, Potter, Anderson & Corroon, Wilmington, for defendants GAC Properties Credit, Inc., GAC Properties, Inc., GAC Rental Corp., GAC Corp., S. Hayward Wills, Russell E. Kemmerer, James F. Ring and James R. Powell.

HARTNETT, Vice Chancellor.

These two actions, commenced in 1975, were previously consolidated for trial. In *Farland v. Wills*, C.A. # 4888 (*Farland* case), the action was brought by Leo W. Farland, a non-resident of Delaware, who was a holder of GAC Properties Credit, Inc. (Credit) 12% debentures, on his behalf and on behalf of all similarly situated holders of debentures, against four corporate defendants (three of which are Delaware corporations, including Credit) and five individual non-resident defendants (Wills, Kemmerer, Ring, Stuken, and Powell). The corporate defendants are interconnected in a manner which does not need to be set forth here. The Complaint in *Farland* was filed on September 22, 1975, and a Sequestration Order was entered that same day pursuant to 10 *Del.C.* § 366[1] directing the five individual defendants to appear on or before November 3, 1975. Pursuant to the Sequestration Order, securities owned by the individual defendants in Credit were seized by the sequestrator to compel the appearance of defendants. Thereafter, on October 9, 1975, well before the November 3 deadline, all the individual defendants, except Stuken, stipulated to enter a general appearance[2] and an Order was entered directing the sequestrator to release any property which had been seized. The time within which individual defendants were given to file an answer was extended to November 3, 1975. Defendant Stuken has not appeared in these actions.

On October 23, 1975, after the entry of the appearances in the *Farland* case, Bank of America National Trust and Savings Association, a foreign corporation, (Bank of America), the indenture trustee for Credit's 12% debentures, filed suit against the same individual and corporate defendants named in the *Farland* case; and on November 6, 1975, Chemical Bank, a foreign corporation, in its capacity as indenture trustee for Credit's 11% debentures, intervened as plaintiff in that case.

Unlike the *Farland* case, in *Bank of America v. GAC Properties Credit, Inc.*, C.A. # 4914 (*Bank of America* case), an Order of Sequestration was not sought by the plaintiffs. Instead, counsel for the four appearing defendants voluntarily accepted service of the Complaints, and on November 5, 1975, and November 26, 1975, defendants answered the respective Complaints of Bank of America and Chemical Bank, stating in both answers that they ". . . hereby appear generally and through . . . their attorneys . . . ." Extensive discovery then took place in the two cases and trial was scheduled to convene in the fall of 1976 but then was continued by the Court because of a vacancy in this Court.

On June 24, 1977, the United States Supreme Court in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) ruled that the Delaware sequestration stat-

---

1. 10 *Del.C.* § 366 is quoted infra.

2. The precise language in the Stipulation provided:

"IT IS HEREBY STIPULATED as follows:
1. That defendants S. Hayward Wills, John F. Ring, Russell E. Kemmerer, James R. Powell,

GAC Corporations, GAC Properties, Inc., GAC Rental Corporation, and GAC Properties Credit, Inc. hereby enter a general appearance in this action."

\* \* \* \* \* \*

ute, 10 *Del.C.* § 366, had been applied unconstitutionally in that case to obtain substituted service of process against non-resident defendants. On July 29, 1977, some thirty-five days after the *Shaffer* opinion was released but before the mandate was issued by the U. S. Supreme Court, the individual defendants in the two cases before this Court filed a Motion To Dismiss under Chancery Court Rule 12(b)(2) and (5) on the grounds that this Court lacked jurisdiction over the persons and that service of process was insufficient. Individual defendants subsequently indicated that their Motion To Dismiss was based on the ruling in *Shaffer*.

The acts of defendants complained of in the Complaints, in essence, are that corporate defendants and individual defendants made false statements in connection with a tender offer made by Credit, a Delaware corporation, for its debentures, and that there were certain fraudulent transfers of assets among the various corporate defendants.

The individual defendants, at or shortly before the time the tender offer was made, were directors of Credit and one or more of the other corporate defendants.

This is my decision on the Motion To Dismiss following briefing and argument.

The issues to be decided at this stage are:

(1) Was 10 *Del.C.* § 366, the Delaware sequestration statute, declared unconstitutional and void by the U. S. Supreme Court in *Shaffer v. Heitner*, supra?

(2) If 10 *Del.C.* § 366 is not void, did the individual defendants have sufficient minimum contacts with Delaware as to render them amenable to service by substituted service of process pursuant to 10 *Del.C.* § 366 in these cases?

(3) If defendants' contacts with Delaware were insufficient to uphold substituted service of process upon them by use of 10 *Del.C.* § 366, did they nevertheless waive their right to object to the personal jurisdiction of this Court?

Each issue will be discussed separately.

## IS 10 DEL.C. § 366 VOID?

### I

The first question to be addressed is whether 10 *Del.C.* § 366 is now unconstitutional and void.

There is nothing in *Shaffer v. Heitner* which indicates that the U. S. Supreme Court found 10 *Del.C.* § 366[3] to be unconstitutional per se.

---

**3.** 10 *Del.C.* § 366 states:

(a) If it appears in any complaint filed in the Court of Chancery that the defendant or any one or more of the defendants is a nonresident of the State, the Court may make an order directing such nonresident defendant or defendants to appear by a day certain to be designated. Such order shall be served on such nonresident defendant or defendants by mail or otherwise, if practicable, and shall be published in such manner as the Court directs, not less than once a week for 3 consecutive weeks. The Court may compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults. Any defendant whose property shall have been so seized and who shall have entered a general appearance in the cause may, upon notice to the plaintiff, petition the Court for an order releasing such property or any part thereof from the seizure. The Court shall release such property unless the plaintiff shall satisfy the Court that because of other circumstances there is a reasonable possibility that such release may render it substantially less likely that plaintiff will obtain satisfaction of any judgment secured. If such petition shall not be granted, or if no such petition shall be filed, such property shall remain subject to seizure and may be sold to satisfy any judgment entered in the cause. The Court may at any time release such property or any part thereof upon the giving of sufficient security.

(b) The Court may make all necessary rules respecting the form of process, the manner of issuance and return thereof, the release of such property from seizure and for the sale of the property so seized, and may require the plaintiff to give approved security to abide any order of the Court respecting the property.

(c) Any transfer or assignment of the property so seized after the seizure thereof shall be void and after the sale of the property is made and confirmed, the purchaser shall be entitled to and have all the right, title and interest of the defendant in and to the property so seized and sold and such sale and confirmation shall transfer to the purchaser all the right, title and interest of the defendant in and to the property

As stated in footnote number 40 in *Shaffer v. Heitner*, 433 U.S. at 213, 97 S.Ct. at 2585:

> In these circumstances (actual notice to defendants sent by Register in Chancery), we will assume that the procedures followed (pursuant to 10 *Del.C.* § 366) would be sufficient to bring appellants before the Delaware courts, *if minimum contacts existed.* (Language in parenthesis and emphasis added).

It is not the procedures provided in 10 *Del.C.* § 366 which were held to be constitutionally unpermissive but rather the fact that these procedures had been used to compel appearance in Delaware of nonresidents who had little or no contact with Delaware prior to a suit being filed.

In *Shaffer* the U. S. Supreme Court said "We . . . conclude that all assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." 433 U.S. at 212,[4] 97 S.Ct. at 2584.

 I therefore hold that 10 *Del.C.* § 366 is not unconstitutional per se and may still be utilized in appropriate circumstances to compel the appearance of a non-resident defendant if the defendant had sufficient minimum contacts with Delaware to support the jurisdiction of this Court.[5] *Grynberg v. Burke*, Del.Ch., 388 A.2d 443 (1978).

## II

 Nothing contained in the recently enacted Service of Process on Nonresident Directors Act (10 *Del.C.* § 3114 enacted by

---

as fully as if the defendant had transferred the same to the purchaser in accordance with law.

4. Professor David H. Vernon in his perceptive article *State-Court Jurisdiction: A Preliminary Inquiry into the Impact of Shaffer v. Heitner*, 63 Iowa Law Review No. 5, page —— (1978) states:

> The Court held that all assertions of state-court jurisdiction, whether in rem, quasi in rem, or in personam, "must be evaluated according to the standard set forth in *International Shoe*." Thus, in states that extend judicial jurisdiction as far as the Constitution permits, a plaintiff who is unable to obtain personal jurisdiction over a defendant will be, unable to obtain quasi in rem jurisdiction by virtue of the presence of defendant's property in the state. In those states, the utility of quasi in rem jurisdiction has been substantially curtailed. In other states, quasi in rem jurisdiction will be available and will retain substantial utility when personal jurisdiction is not available because of state law limitations, but would be available as a matter of constitutional law if the state wished to assert that jurisdiction. Beyond its relatively clear applicability to the quasi in rem area, however, the ultimate reach of the *Shaffer* holding is difficult to predict.

> Delaware has no general long-arm statute, but after *Shaffer v. Heitner*, the Delaware General Assembly was prevailed upon to almost immediately adopt a directors' implied consent statute. 61 Del.L., Ch. 119. This statute is not, however, a long-arm statute and the General Assembly has not enacted a long-arm statute for all torts. Several statutes providing for substituted service of process exist however. See for example: 10 *Del.C.* § 3104 (service on nonresidents doing business in state); 10 *Del.C.* § 3111 (service on nonresident corporate offi-

cers); 10 *Del.C.* § 3112 (service on nonresident operators of motor vehicles); 8 *Del.C.* § 321(b) (service on corporation by service on Secretary of State); and 8 *Del.C.* § 382(a) (service on foreign corporations doing business in Delaware).

5. The Delaware Supreme Court, by Order in *Melville v. Wilmington Trust Co.*, No. 79–1977, on April 10, 1978, 388 A.2d 1, 98, indicated that 10 *Del.C.* § 366 still has some vitality when it stated:

> Defendant's equitable interests in the policy of insurance, as defined in the sequestration order . . . are seizable under 10 *Del.C.* § 366. Compare *Greene v. Johnston*, Del. Supr., 99 A.2d 627, 636 (1953). See *Huron Holding Corporation v. Lincoln Mine Operating Company*, 312 U.S. 183, 61 S.Ct. 513, 85 L.Ed. 725 (1941). The mere possibility of inconsistent results in the respective Federal and Delaware proceedings is not a sufficient basis for quashing the sequestration. If American Home Assurance Company is ultimately faced with contradictory court orders, it may apply to the Court of Chancery for appropriate relief.

> Plaintiff concedes that under the opinion of the United States Supreme Court in *Shaffer v. Heitner*, reversing *Greyhound Corporation v. Heitner*, Del.Supr., 361 A.2d 225 (1976), it is obliged to meet the minimum contacts jurisdiction over defendant. Plaintiffs contend that the record factually establishes that such test has been met. Defendants did not refer to *Shaffer* in their briefs, nor did they rely on it at oral argument. For that reason, the Court does not regard *Shaffer* as being argued as a basis for reversal.

61 Del.L., Ch. 119) is inconsistent with this holding.

10 *Del.C.* § 3114(d) states:

(d) Nothing herein contained limits or affects the right to serve process in any other manner now or hereafter provided by law. This section is an extension of and not a limitation upon the right otherwise existing of service of legal process upon nonresidents.

That language specifically preserves the right to use 10 *Del.C.* § 366 in appropriate circumstances. The Synopsis attached to the Bill also is not inconsistent with this holding. The Synopsis stated *inter alia*:

The purpose and intent of this legislation is to fill a void in enforcement and interpretation of Delaware corporation laws created by the decision of the United States Supreme Court on June 24, 1977 in *Schaffer* (sic) *v. Heitner.* In that case the Court struck down 10 *Del.C.* § 366 which until now has frequently been the only means whereby nonresident corporate directors of Delaware Corporations could be brought before the courts of this State to answer for their conduct in managing the affairs of the corporation. . .

I do not read the Synopsis as saying that 10 *Del.C.* § 366 has been struck down in its entirety but only that it was struck down as it was utilized in *Shaffer v. Heitner.* In any case, a Synopsis cannot change the meaning of an unambiguous statute. 10 *Del.C.* § 3114(d) is clear and unambiguous. There is therefore no room for judicial interpretation of it. Sutherland Statutory Construction (4th Ed.) § 45.02. See *Council 81, Am. F. of S., C & M Emp. v. State, Dept. of Finance*, Del.Supr., 293 A.2d 567 (1972). The new Act does not limit or affect any existing method of service of process, including 10 *Del.C.* § 366.

### III

■ The standard for judging whether a state statute providing for substituted service of process on a nonresident is constitutionally applied under the rule of law set forth in *Shaffer v. Heitner* is the standard enunciated in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and restated in *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). That standard is that all assertions of state-court jurisdiction must be supported by the presence of a connection between the forum, the litigation and the defendant.[6]

As stated in *Shaffer v. Heitner*, 433 U.S. at 204, 97 S.Ct. at 2580:

Thus, the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of *Pennoyer* rest (after *International Shoe*) became the central concern of the inquiry into personal jurisdiction.

In judging whether particular acts are sufficient minimum contacts to support State-Court jurisdiction, *International Shoe* and *Shaffer v. Heitner* impose a minimum contact fairness test:

due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 quoted in *McGee v. International Life Ins.* and *Shaffer v. Heitner.*

## DID INDIVIDUAL DEFENDANTS HAVE SUFFICIENT MINIMUM CONTACTS WITH DELAWARE TO JUSTIFY USE OF 10 DEL.C. § 366?

### IV

Consideration must now be given as to whether the acts of the individual non-resident defendants did constitute such minimum contacts with Delaware as will support the jurisdiction of this Court over them.

Plaintiffs contend that the corporate defendants and the individual defendants falsely disseminated proxy statements, letters and telegrams, and made false state-

---

6. See Vernon: *State-Court Jurisdiction* etc., supra.

ments in telephone solicitations to Delaware residents in connection with the tender offer of Credit between September and December 1975. It is also alleged that they filed or participated in the filing with the Delaware Securities Commissioner of a false registration statement. None of the original plaintiffs are Delaware residents. The *Farland* action was brought in September of 1975 on behalf of all holders of 12% debentures, and on June 10, 1976, it was made a plaintiff class action pursuant to Rule 23(b)(3) of this Court.[7]

The record shows that most of the materials mailed to Delaware residents bear the name of defendant-Wills, who was the Chairman of the Board of Credit. Defendant-Stuken may have authorized at least one such communication. It is unclear whether the other defendants authorized any communications with the holders of debentures.

The authorization to file the registration statement with the Delaware Securities Commissioner was approved by the Board of Directors of Credit. All of the individual defendants were directors of Credit, and allegedly approved its contents. It is not clear from the present record, however, whether any of them actually took part in any solicitation of Delaware residents.

It is alleged that the registration statement, the materials sent, and the statements made to Delaware residents contained misrepresentations and it is urged that these alleged misrepresentations constituted such tortious activity as to constitute sufficient minimum contact with Delaware to support substituted service of process on the individual non-resident defendants.

The filing of the registration statement with the Delaware Securities Commissioner involves a different legal question than the dissemination of information and will be discussed separately.

## V

There are numerous cases which hold that mailings and telephone calls are not sufficient minimum contacts to support substituted service of process over non-resident defendants. In *Agrashell, Inc. v. Bernard Sirotta Company,* 344 F.2d 583 (2d Cir. 1965), the Court held that there was no jurisdiction under the New York long-arm statute where orders were solicited by mail and telephone even though the contracts were executed in New York. The Court found that the case, a suit for alleged patent infringement, was not an exceptional activity subject to special regulation as in *McGee v. International Life Insurance Company,* supra, and that defendants did not, in any material respect, invoke the benefits and protections of New York law merely by negotiation, particularly because defendants did not go to New York in person to negotiate. See also *Scheidt v. Young,* 389 F.2d 58 (3rd Cir. 1968); *Arthur, Ross & Peters v. Housing, Inc.,* 508 F.2d 562 (5th Cir. 1975); *Deloro Smelting and Refining Company v. Engelhand Minerals and Chemicals Corporation,* 313 F.Supp. 470 (D.N.J.1970); *Hamilton Brothers, Inc. v. Peterson,* 445 F.2d 1334 (5th Cir. 1971); *Beal v. Caldwell,* 322 F.Supp. 1151 (E.D. Tenn.1970); *Braasch v. Vail Associates, Inc.,* 370 F.Supp. 809 (N.D.Ill.1973); and *American Steel, Inc. v. Cascade Steel Rolling Mills, Inc.,* 425 F.Supp. 301 (S.D.Texas 1975, aff'd, 548 F.2d 620 (5th Cir. 1977). All of these cases held that mail and telecommunications were not sufficient minimum contact to give in personam jurisdiction over non-residents.

7. Rule 23(b)(3) states:

 The Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matter pertinent to the findings include: (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

## VI

On the other hand a very few cases have upheld jurisdiction based on state long-arm statutes even though only a single tort was committed by the non-resident. See 25 A.L.R.2d 1202 and the cases discussed therein.

In *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961), and *Koplin v. Thomas, Habb & Botts,* 73 Ill.App.2d 242, 219 N.E.2d 646 (1966), it was held that non-residents who commit a tortious act submit to Illinois' jurisdiction by virtue of its long-arm statute. In *Gray,* the Court stated that the quantity of the business done in Illinois is not determinative, thus leading to the conclusion that a single tort, or isolated contact under the Illinois statute, is sufficient.

In *Smyth v. Twin State Improvement Corp.,* Supr. Ct. Vt., 116 Vt. 569, 80 A.2d 664 (1951), it was held that a single personal injury tort committed in Vermont by a non-resident was a sufficient minimum contact with Vermont to support substituted service of process although the defendant did not have sufficient contacts to be deemed to be doing business in Vermont.

And in *Ziegler v. Houghton-Mifflin Co.,* 80 Ill.App.2d 210, 224 N.E.2d 12 (1967), suit was brought against the author of a textbook for invasion of privacy and for moneys due under a royalties contract. The Court held that letters, solicitations, phone calls, mailings over a long period of time of materials and the executing of the contract in Illinois constituted continuous contact and thus, under the Illinois long-arm statute, were sufficient minimum contacts to uphold substituted service of process.

A review of these cases establishes that the number of minimum contacts required to support substituted service of process on non-resident defendants is much less in the case of actions alleging the commission of a tort than in actions alleging breach of contract or arising out of doing business.

The very few cases which have upheld substituted service of process where the contacts fell short of doing business within the state are mostly personal injury tort cases where a long-arm statute specifically authorized substituted service of process in actions arising out of the injurious act which occurred in the state asserting jurisdiction.

In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) the U. S. Supreme Court held that the application of the minimal contact rule will vary with the quality and nature of the defendant's activity but it is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state thus invoking the benefits and protection of its laws.

The writer of the annotation in 24 A.L. R.3d 532 in commenting on the holding in *International Shoe* states:

> In lieu of the prior tests a new test was laid down to the effect that the due process clause requires only that in order to subject a defendant to a judgment in personam, "certain minimum contacts" within the territory of the forum must be shown so that the maintenance of the suit does not "offend traditional notions of fair play and substantial justice," the court adding that these demands of due process "may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." (at page 543)

A case often cited is *McGee v. International Life Insurance Company,* supra. In that case a California resident who was a beneficiary of a life insurance policy solicited and issued by a Texas insurance company to a California resident, brought suit against the company in California. The defendant issued its policies and received the premiums by mail. It was held that the California statute which subjected foreign corporations selling insurance to suit in California on the insurance contracts issued to California residents was constitutional even

though such corporations could not be personally served with process in California. The Court considered the exceptional activity involved and held that it did not offend traditional notions of fair play and substantial justice to require the insurance carrier to defend the suit in California which was brought by a California beneficiary on the insurance contract which had a substantial connection with that State. It should be noted that courts are not in agreement as to whether or not *McGee* is applicable only to insurance contracts. See 24 A.L.R.3d 532, n. 9 at 545.

The acts of the individual defendants in the cases before me, assuming the truth of plaintiff's allegations for the purpose of these motions and disregarding the filings under the Delaware Securities Act, were: authorizing and participating in a tender offer campaign by Credit which was directed to holders of debentures of Credit and the contact with one or two Delaware residents by telephone, telegram and mailings urging them to accept the tender offer.

 I hold that these acts of the individual non-resident defendants did not constitute sufficient minimum contact with Delaware to support substituted service of process over them in these cases.

The cases holding that phone calls and mailings are insufficient minimum contact to support substituted service are controlling. The cases holding that a single tort may, in some circumstances, support substituted service were all based on long-arm statutes and are not analogous to the present controversy.

## VII

Consideration must now be given whether the filings by Credit with the Delaware Securities Commissioner constituted sufficient minimum contact with Delaware or exceptional activity to support substituted service upon the individual non-resident defendants.

It appears that Credit filed a registration statement with the Delaware Securities Commissioner pursuant to the Delaware Securities Act (6 *Del.C.*, Ch. 73) in order to register its tender offer.

It is now alleged by plaintiffs that the registration statement contains false and misleading statements, but the Complaints make no such allegations nor do they even mention the Delaware Securities Act.

6 *Del.C.* § 7303(2) makes it unlawful to make any untrue statement or to fail to state a material fact in connection with a registered security.[8] 6 *Del.C.* § 7323(b)[9] subjects officers and directors of a corporation covered by the Delaware Securities Act to personal liability for violations of the Act.

 A non-resident who engages in an act prohibited by the Delaware Securities Act is deemed to have consented to substituted service of process.[10]

---

**8.** 6 *Del.C.* § 7303 states:
 It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly:
 \* \* \* \* \* \*
 (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . .

 \* \* \* \* \* \*

**9.** 6 *Del.C.* § 7323(b) states:
 (b) Every person who directly or indirectly controls a seller or buyer liable under subsection (a), every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions, every employee of such seller or buyer who materially aids in the sale, and every bro-

ker-dealer or agent who materially aids in the sale or purchase are also liable jointly and severally with and to the same extent as the seller or buyer, unless the nonseller or nonbuyer who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.

**10.** 6 *Del.C.* § 7327, par. 2, states:
 When any person, including any nonresident of this State, engages in conduct prohibited or made actionable by this chapter or any rule or order hereunder, and he has not filed a consent to service of process under this section and personal jurisdiction over him cannot otherwise be obtained in this State, that conduct shall be considered equiv-

If the instant actions had been commenced by a Delaware resident pursuant to the Delaware Securities Act (6 *Del.C.*, Ch. 73) substituted service of process on the individual non-resident defendants may have been possible under that Act. The consent by the directors of Credit to be sued under the Delaware Securities Act (6 *Del.C.*, Ch. 73) by participating in the filing of a registration statement may support substituted service pursuant to 6 *Del.C.* § 7327. The act of filing a false registration statement under the Delaware Securities Act might meet the minimum contact and fairness tests of *International Shoe,* or exceptional activity test of *McGee v. International Life Insurance Company,* supra, so as to uphold substituted service of process in the suit of a Delaware resident brought pursuant to the provisions of the Delaware Securities Act. That question is not before me, however, because these actions were not brought pursuant to the Delaware Securities Act and 6 *Del.C.* § 7327 was not utilized to obtain substituted service of process over the individual defendants, nor are the plaintiffs residents of Delaware.

██ I therefore hold that the filing by Credit of a registration statement with the Delaware Securities Commissioner does not, in the context of these cases, support substituted service of process upon the individual non-resident defendants pursuant to 10 *Del.C.* § 366.

### VIII

██ The fact that one or two Delaware residents were discovered to be members of the plaintiff class long after service of process was completed does not affect the fact that these suits were not brought by Delaware residents to enforce rights under the Delaware Securities Act.

It has been held that the existence of one or more members of a class who support jurisdiction in a court is insufficient to give a court jurisdiction over the entire class, at least in the Federal District Courts. In the leading case of *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the U. S. Supreme Court held that for diversity of citizenship jurisdictional purposes, claims could be aggregated to satisfy the jurisdictional amount only in those suits involving multiple plaintiffs who were enforcing a single right in which they had a common interest. See also *Zahn v. International Paper Company,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) which held that an action brought under Rule 23(b)(3) could not proceed as a class action because unnamed plaintiffs who had separate and distinct claims did not individually satisfy the $10,000 jurisdictional amount requirement pursuant to 28 U.S.C. § 1332(a).

Aside from the question of jurisdiction, it has been held that a class action based on federal law cannot be used to attract individual actions in which the alleged wrongs are not predicated upon federal law and which are only remotely connected with the class action. *Warren G. Kleban Engineering Corp. v. Caldwell,* 490 F.2d 800 (5th Cir. 1974).

The discovery of the presence of one or two Delaware residents as members of the plaintiff class, long after the substituted service of process was completed, cannot cure the individual non-resident defendant's objection to the use of substituted service of process to compel their appearance in these cases.

### DID INDIVIDUAL DEFENDANTS WAIVE THEIR RIGHT TO OBJECT TO THE JURISDICTION OF THIS COURT?

### IX

██ Since I have held that the individual non-resident defendants did not have sufficient minimum contacts with Delaware to support substituted service of process upon

---

alent to his appointment of the Commissioner or his successor in office to be his attorney to receive process of any lawful process in any noncriminal suit, action or proceeding against him or his successor, executor or administrator which grows out of that conduct in which is brought under this chapter or any rule or order thereunder, with the same force and validity as if served on him personally. Service may be made in the same manner as stated above.

them, I must now consider whether the individual defendants waived any right to object to the personal jurisdiction of this Court by entering a general appearance.

It is urged by plaintiffs that the individual defendants voluntarily chose to enter an appearance in this Court for reasons of strategy even though they may have had the right to contest the service of process on them. They were engaged in a proxy tender offer campaign and may have desired to state in the proxy materials being disseminated that they had entered appearances and were contesting the suits filed by opponents of the tender offer. Plaintiffs called attention to a supplement to the proxy statement sent out by Credit on October 3, 1975, a date prior to the entry of the general appearances, which stated:

> It is the Company's position that, contrary to the allegations of the complaint, the transactions complained of were necessary and proper and were taken after careful consideration of the best interests of the Company and its creditors. Accordingly, the defendants intend to deny all material allegations of the complaint and oppose all demands made by the plaintiff. Delaware counsel have advised, however, that there can be no judicial determination of the case prior to November 15, 1975, and that it may be many months thereafter until a final disposition can be made.

Individual defendants deny that they entered an appearance in these actions for strategy reasons and assert that they entered their appearance only because they were compelled to do so because their securities had been seized pursuant to 10 *Del.C.* § 366. The only factual evidence they offered to sustain this position, however, is the Stipulation by which they entered their appearance which is quoted in footnote number 1 of this Opinion. That Stipulation does not substantiate their position.

The record does not sustain individual defendants' position that they entered a general appearance in these two actions *only* because their securities had been seized in the first action pursuant to 10 *Del.C.* § 366. It is just as probable that their appearance was motivated by the strategic decision to be able to allude to the defense of these actions in the proxy statements.

This question of waiver was recently discussed in much greater detail in *Grynberg v. Burke,* supra. Vice Chancellor Brown held that although the entry of an appearance compelled by the sequestration and seizure of securities owned by non-resident defendants, prior to the holding in *Shaffer,* did not automatically constitute a waiver of the right to withdraw the appearance after the *Shaffer* decision was announced, the right to withdraw is not absolute. The question of waiver of the right to withdraw an appearance depends on the factual situation in each case. As Vice Chancellor Brown said:

> As plaintiffs point out, defects in service of process are often deliberately waived for a variety of reasons. Sometimes defendants find it convenient for their purpose to submit voluntarily to suit against them in a foreign jurisdiction. The ability to join third-party defendants or to cross-claim against a co-defendant may be a factor. Avoidance of unpleasant publicity in one's home town, or perhaps, a more favorable body of law, or a desire to obtain a more speedy resolution on the merits in a jurisdiction having less of a judicial backlog may well influence a decision to waive defective process. In fact Chancery Rule 12(h)(1) recognizes these commonplace considerations by providing that defenses of lack of jurisdiction over the person and insufficiency of service of process are considered waived as a matter of course by the filing of a motion or responsive pleading which fails to assert them.

In other words, while I hold that the individual defendants here have not waived the right to challenge the jurisdiction of this Court over their persons I cannot accept at this point their naked assertion that their only reason for choosing to enter a general appearance was because of their desire to obtain a release of their property interests from the effect of the sequestration order. As yet there is nothing in the record of which I

am aware that would support such a finding. And since these defendants now seek to avoid their affirmative act of entering the general appearances, and to do so based on the *Shaffer* decision, the burden of demonstrating that this was the sole motivation for their conduct, as opposed to other equally plausible considerations, should be theirs to establish.

The burden is therefore placed upon nonresident defendants to show that their appearance was entered by compulsion in response to the sequestration and seizure of their securities.

I find that the individual defendants here have failed to sustain the burden of proving that their entry of general appearances in these two actions was due solely to compulsion caused by the sequestration of their stock in the *Farland* case.

The Motion of the individual defendants to dismiss the Complaints is therefore denied.

SO ORDERED.