Thomas R. **CARPER**, State Treasurer, Defendant Below, Appellant,

v.

**NEW CASTLE COUNTY BOARD OF EDUCATION**, a Judicially Decreed School Board, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted on Rehearing en Banc Feb. 11, 1981.

Decided June 22, 1981.

**5.** 56 *Del.Laws*, ch. 50 (1967). See, e. g., 8 *Del.C.* §§ 251, 252 and 257.

Roger A. Brown (argued), and Don C. Brown, Deputy Attys. Gen., Wilmington, for defendant-appellant.

Henry N. Herndon, Jr. (argued), and Richard P. Beck, of Morris, James, Hitchens, & Williams, Wilmington, for plaintiff-appellee.

Before HERRMANN, C.J., and DUFFY, McNEILLY, QUILLEN and HORSEY, JJ.

QUILLEN, Justice:

This appeal by the State Treasurer from an order of the Superior Court requires us to construe a statute, 29 *Del.C.* § 5202, governing health care insurance for State employees. The issue presented is solely one of statutory construction. Specifically, it concerns the relative contributions, under § 5202, of the State and appellee, the New Castle County Board of Education (Board), to the cost of health care coverage of certain New Castle County School District employees (District employees).

Prior to January 1, 1980, 29 *Del.C.* § 5202(a) provided, in relevant part:

"This State shall pay the full cost of premium or subscription charges for a basic plan of health care insurance coverage for all regular officers and employees and for eligible pensioners of the State not otherwise covered under a group health care insurance contract."

On or about November 21, 1978, the Board entered into a collective bargaining agreement with the New Castle County Education Association, representative of the bargaining unit comprised of the certificated non-administrative District employees. Provisions of that contract pertinent to this appeal provide:

"23:9.1 Employees will continue to receive existing carrier-provided fringe benefits insofar as they remain available through June 30, 1979. If a benefit is cancelled the parties shall meet to negotiate an alternate fringe benefit equal to the fringe benefit that was cancelled. Employees who are currently enrolled in the State plan of Blue Cross Blue Shield will receive no less than $25.00 per month toward coverage beyond the basic State plan for the period January 1, 1979 to June 30, 1979.

"23:9.2 Effective July 1, 1979 employees will receive fully paid family comprehensive Blue Cross Blue Shield, limited to the premium in effect at the signing of this agreement. Any increase in the premium will be covered by using other fringe benefit money or payroll deduction."

As of July 1, 1979, the State was contributing, pursuant to § 5202(a), $33.16 per month toward the health care coverage of each District employee, the full cost of an individual basic health insurance plan. And the Board was obligated by contract to contribute up to $63.56 per month for District employees electing to receive comprehensive family coverage, the difference between the State's contribution and the total cost of comprehensive family coverage.

Effective January 1, 1980, the General Assembly amended § 5202 in two significant respects. The State's obligation under subsection (a) was altered as follows:

"The State shall pay premium or subscription charges for the following, whichever is greater:

1. The full cost of a basic individual contract of health care insurance coverage for all regular officers, employees and eligible pensioners of the State not otherwise covered under a

group health care insurance contract, or

2. Seventy-five percent of the cost of the basic subscriber and child contract or basic family contract for eligible regular officers, employees and pensioners not eligible for federal medicare." [1]

And subsection (d) was added:

"Agencies or other units of the State providing a contribution on April 1, 1979, by contract, agreement or otherwise, toward the cost of health care coverage of regular officers, employees and eligible pensioners, their spouses, dependent children or families, shall continue to make such contributions after such date, unless relieved of such responsibility by an act of the General Assembly."

Thereafter, in January of 1980, the Board filed a complaint in Superior Court, seeking a writ of mandamus to be issued to the State Treasurer or, alternatively, a declaratory judgment directing the State Treasurer to pay the maximum amount provided by § 5202(a), as amended, toward the health care coverage of District employees, without diminution by reason by any obligation on the part of the Board under § 5202(d). The State Treasurer counterclaimed against the Board, asking for a declaratory judgment that, under § 5202(d), the Board must continue to pay $63.56 per month toward the cost of comprehensive family insurance for District employees, and that, under § 5202(a), the State shall pay the balance of the cost of comprehensive family coverage. There being no factual dispute, both parties moved for judgment on the pleadings.

The Superior Court found for the Board, holding that § 5202(a) unambiguously requires the State to pay 100% of an individual basic plan for 75% of a family basic plan, whichever the case may be, and nothing less.[2] It further said that § 5202(d) requires the Board to "supplement the State's payments under subsection (a) as necessary to provide its employees with the same level of health care benefits as they were entitled to receive by contract...as of April 1, 1979." The State Treasurer appeals; we reverse.[3]

In this Court, the State Treasurer argues that the purpose and effect of the § 5202 amendments is that a State agency's obligation under subsection (d) modifies the State's obligation under subsection (a). This contention is based on the State Treasurer's reading of subsection (d) to require the Board, and other agencies or units of the State contributing to employee health care insurance as of April 1, 1979, to continue making "such contributions" *in the same dollar amount.* This construction would apportion the responsibility for District employee health care insurance in the following manner: the Board would continue to contribute $63.56 per month as it is obligated to do by contract as of April 1, 1979, and the State would pay the difference, up to 75% of the total cost of basic family coverage as required by subsection (a), between the amount paid by the Board and the full cost of comprehensive family coverage.

The Board, on the other hand, espouses the reasoning of the Superior Court: the amendments to § 5202 unambiguously increase the State's mandatory contribution while maintaining the *supplemental* contributions by State agencies or units, such as

---

1. Section 5202(a) currently requires the State to provide 100% of the cost of both individual and family basic health insurance plans. 62 *Del.Laws* c. 294, § 1, effective July 1, 1980.

2. The parties are agreed that, subsequent to the enactment of 62 *Del.Laws* Ch. 158, the State is required to continue to pay for each eligible Board employee electing health care coverage an amount equal to the premium cost of a basic individual health care plan. Thus, we refer only to the parties' relative contributions toward family coverage above this floor payment.

3. A panel of this Court filed an opinion dated November 24, 1980. Thereafter, a motion for rehearing by the Court *en Banc* was granted. This opinion supersedes the prior opinion which is hereby withdrawn. In the *en Banc* argument, counsel brought to this Court's attention helpful detail as to the legislative history, including the original language proposed and the amendments adopted. Some of this material had not been considered by the panel.

the Board, toward the cost of health care insurance for State employees. Under this view, the reference to "contribution" in subsection (d) means such amounts, if any, over and above the State's obligation under subsection (a), which are necessary to maintain the level of coverage afforded State employees by agencies or other units of the State on April 1, 1979. The relative contributions of the parties under this view would be as follows: the State would contribute 75% of basic family coverage and the Board would then pick up the difference between the State's contribution and the full cost of family comprehensive insurance for District employees electing such coverage under their contract.

█ Unlike the Superior Court, we cannot say that the language of § 5202 makes clear that either party's interpretation is correct. Rather, reading subsections (a) and (d) in conjunction, we find ambiguity in § 5202. Our task, then, in order to resolve the ambiguity, is to discern the legislative intent behind the § 5202 amendments. *Mosley v. Bank of Delaware*, Del.Supr., 372 A.2d 178 (1977); *A & P Stores v. Hannigan*, Del.Supr., 367 A.2d 641 (1976); *Council 81, Am. Fed'n of State, County and Municipal Employees v. State*, Del.Supr., 293 A.2d 567 (1972).

█ These amendments, in final form and contained in House Bill 435, were passed July 12, 1979, 62 *Del.Laws*, c. 158, and became effective January 1, 1980. The synopsis of the Bill, a proper source from which to glean legislative intent, cf. *Bank of American National Trust and Savings Assoc. v. GAC Properties Credit, Inc.*, Del. Ch., 389 A.2d 1304 (1978), reads, in pertinent part:

"This bill if enacted would provide for:

1. Hospital, surgical-medical, and therapeutic and diagnostic health care coverage for State employees, pensioners, their spouses and dependents, [and]

2. The *maintenance of financial contributions* under bargaining agreements and other arrangements *at their existing level . . .*" (emphasis added).

In our view, the underscored language of the synopsis, which was not altered in any significant manner during the legislative history of the Act, contemplates that the obligation of an agency or unit of the State, as of April 1, 1979, would continue in the same dollar amount.

Moreover, House Bill 435, § 6(b), as originally written and proposed May 15, 1979, provided, in pertinent part:

"For regular officers, employees and eligible pensioners of such agencies or units of the State which enter into any agreement on or before April 1, 1979, or otherwise providing for any contribution toward the cost of health care coverage of the spouses and/or eligible child dependents of such officers, employees and pensioners, the State shall fund in October, 1979, and thereafter, *the difference between such contribution and the total premium or subscription charges for such coverage.*" (Emphasis added).

The emphasized words quoted above can leave no doubt regarding the intent of the General Assembly: the agency or unit has initial (and the State secondary) responsibility for health care insurance of State employees. In short, on the language of § 6(b) as originally proposed, the State would clearly prevail.

Although the original language of § 6(b) does not appear in the final form of the Bill, we think the legislative intent remained the same for the following reasons. First, as noted above, the synopsis, which indicates the General Assembly's intent in clear terms, remained virtually the same throughout the Bill's legislative history. Second, if there had been a specific legislative purpose to change from the contribution scheme expressed by § 6(b) to an absolute and uniform State monetary contribution without maintenance of the same dollar contribution by agencies such as the Board, that purpose would have been clearly manifested in the language used. It would not depend on a vague, conceptual definition attaching to the word "contribution" in § 5202(d), as suggested by the

Board. Third, legislative history indicates that the language which ultimately became subsection (d) was first proposed by Senate Amendment 1 as an addition to § 6(b) of the Bill. Senate Amendment 1 was not adopted. Instead, Senate Amendment 2 was adopted. The latter amendment struck two previous House Amendments and five sections of the original Bill. It included the provisions of Senate Amendment 1. Thus, § 6(b) of the original Bill was deleted, leaving only the language first proposed as Senate Amendment 1 to be promulgated as subsection (d). The result was a more compact Bill in better form for codification. In our view, this transition does not evidence a change in legislative intent, but rather a legislative view that § 6(b) was surplusage which could be stricken because it was basically duplicated by the provisions of Senate Amendment 1.

■ Accordingly, we hold that subsection (d) of § 5202 does modify the State's obligation to provide health care insurance under subsection (a). It follows that the Board will continue to contribute, under § 5202(d), toward the cost of District employee health care insurance the amount it is obligated to contribute by contract as of April 1, 1979. And the State shall pay the difference, up to 75% of the cost of a basic family plan, between the Board's contribution and the full cost of a comprehensive family plan.

■ We also note that the District employees' situation would be the same under either party's view of § 5202. They would receive fully paid comprehensive family coverage as provided by their contract with the Board. But, under the Board's view, the Board would benefit by paying less than the $63.56 per month it is contractually obligated to pay toward that coverage. Since the Board is legally bound to pay that amount, the Board's interpretation would constitute § 5202 a legislative grant. As a general rule, legislative grants are strictly construed against the grantee, who in this case, of course, would be the Board. 3 *Sutherland Statutory Construction* (4 ed.) § 63.02. Since a grant is not clear, this adds further weight against the Board's inter-

pretation of § 5202, which we refuse to adopt.

One final question remains unanswered. Our construction of § 5202(d) requires the Board to pay the amount it is obligated to contribute by contract as of April 1, 1979. The Board contends that, under the November 1978 contract with the District employees, it was paying $25.00 per month on April 1, 1979, and, consequently, it should continue to pay that amount. The State Treasurer points out, however, that the 1978 contract obligated the Board to pay more, $63.56 per month, beginning July 1, 1979.

We read § 5202(d) to require the Board to make contributions as it is obligated to do as of April 1, 1979, not as it was paying on that date. As of April 1, 1979, the Board was bound by the terms of the 1978 contract with the District employees to pay $63.56 per month, beginning July 1, 1979. Thus, we hold that § 5202(d) requires the Board to pay $63.56 per month until "relieved of such responsibility by an act of the General Assembly", 29 *Del.C.* § 5202(d), and reiterate our conclusion that the State shall pay the difference, up to 75% of a basic family plan, between that amount and the full cost of comprehensive family coverage.

The judgment of the Superior Court is reversed and the matter is remanded with the direction that the Superior Court modify its Order of April 29, 1980, by specifying in part that:

(a) The State is required to continue to pay for each eligible Board employee electing to have health care coverage under 29 *Del.C.* Ch. 52 an amount equal to the premium cost of a basic individual health care plan; and

(b) With respect to any additional health care coverage to which each eligible Board employee is entitled, the Board shall contribute up to $63.56 per month to the cost thereof, beginning July 1, 1979, and until the Board is relieved of this responsibility by an Act of the General Assembly, and the State shall continue to pay the difference in the cost of such additional

coverage, except that the total amount contributed by the State with respect to each eligible employee of the Board for basic individual and additional health care coverage shall not exceed 75% of the premium cost of Basic Subscriber and Child or Basic Family coverage, as the case may be, subject to further Act of the General Assembly.

McNEILLY, Justice, dissenting:

Since I agree with the interpretation of the statute rendered by the Superior Court, I am constrained to respectfully dissent from the majority opinion.

Specifically, I agree with the Court below that § 5202(a) "requires the State to pay on behalf of each eligible public employee either 100% of the cost of a basic individual health insurance plan or 75% of the cost of a basic family health insurance plan, whichever is greater." * I also agree with the Superior Court that § 5202(d):

"requires a public agency employer to supplement the State's payments under subsection (a) as necessary to provide its employees with the same level of health care benefits as they were entitled to receive by contract, agreement or otherwise as of April 1, 1979. The precise extent of a public agency employer's monetary obligation under subsection (d) will be determined by computing the cost of benefits to which its employees are entitled and subtracting the amount which the State is required to contribute under subsection (a)."

As I read subsection (d), its primary purpose is to transform public agency contractual obligations as of April 1, 1979, to provide health care benefits into statutory obligations. Thus, those agencies providing such benefits as of the key date at a level in excess of that provided by the State under subsection (a) must continue to provide such increased benefits until relieved from doing so by the General Assembly, as perhaps

through legislation increasing the State's contributions under subsection (a). I find nothing in the language of § 5202 to indicate that the General Assembly intended for the operation of subsection (d) to somehow supplant, in whole or part, the State's obligations under subsection (a). In my opinion § 5202 is a clear and unambiguous expression of legislative intent to provide public employees with a minimum uniform level of health insurance coverage, as established by subsection (a), while also requiring the continuation of any additional benefits which public agency employers may have been providing as of April 1, 1979.

---

* Section 5202(a) was again amended during the pendency of this appeal by 62 *Del.Laws,* c. 294, effective July 1, 1980. This amendment increases the State's obligation under § 5202(a) from 75% to 100% of the cost of a basic family or a basic subscriber and child health insurance contract.