In the

# United States Court of Appeals
## For the Seventh Circuit

No. 08-3322

LAURA M. SWANSON, individually
and on behalf of a class,

*Plaintiff-Appellant,*

*v.*

BANK OF AMERICA, N.A., and
FIA CARD SERVICES, N.A.,

*Defendants-Appellees.*

On Petition for Rehearing

DECIDED APRIL 24, 2009

Before EASTERBROOK, *Chief Judge*, and KANNE and
EVANS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Our opinion in this appeal,
released on March 19, 2009, held that issuers of credit
cards may increase interest rates at the start of a billing
cycle, without giving separate notice to borrowers, when
contracts with the borrowers authorize the rate increase.
We rejected Laura Swanson's argument that 12 C.F.R.

§226.9(c) requires at least 15 days' notice before a rate of interest may change. While our opinion was at the printer, a panel of the ninth circuit came to a contrary conclusion. *McCoy v. Chase Manhattan Bank, USA, N.A.*, 2009 U.S. App. LEXIS 5380 (9th Cir. Mar. 16, 2009). Swanson has filed a petition for rehearing, contending that we should follow the ninth circuit and eliminate the conflict among the circuits.

Before *McCoy* issued, every federal judge (trial or appellate) who had analyzed this subject had concluded that §226.9(c) requires notice of a change in contractual terms, but not of a lender's decision to invoke its rights under terms already in the contract. Like these other judges, we acknowledged that §226.9(c) is ambiguous and that its reference to "terms" could mean the rate of interest, as well as terms of a contract, but we thought that the Federal Reserve Board's commentary— both to the existing regulation, and accompanying a proposed change in the regulation—shows that the Bank had the better of the argument. See *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 212–13, 217 (1981); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555 (1980). And, although ambiguity may plague the regulation and the commentary, there is no ambiguity in the contract. It takes more than a vague regulation plus cloudy commentary to displace a contract.

One of the courts that had reached this conclusion was—the ninth circuit. *Evans v. Chase Bank USA, N.A.*, 267 Fed. App'x 692 (9th Cir. 2008). True, *Evans* is a nonprecedential decision, see Fed. R. App. P. 32.1, and

therefore did not bind the panel in *McCoy*. But nonprecedential decisions should be used only when the legal issue is clear enough that all reasonable judges will come out the same way. The panel in *Evans* must think that the result of the panel in *McCoy* is unreasonable. What's more, there was a persuasive dissent in *McCoy* written, as it happens, by a judge of this circuit sitting by designation. *McCoy*, 2009 U.S. App. LEXIS 5380 at *25–*46 (Cudahy, J., dissenting). If there is a conflict in need of resolution, it is among judges of the ninth circuit rather than between the seventh and the ninth. And any conflict is of short duration: a new 12 C.F.R. §226.9(g), which takes effect on July 1, 2010, clears up the ambiguity in the current regulation and commentary.

The majority in *McCoy* placed particular emphasis on comment 3 to §226.9(c). As our opinion did not discuss that comment—Swanson had relied almost exclusively on comment 1, mentioning comment 3 only in passing—a few words are in order. It is helpful to set out the pertinent portions of comments 1 and 3, so that the reader may see the differences.

> 1. *Changes initially disclosed*. No notice of a change in terms need be given if the specific change is set forth initially, such as: Rate increases under a properly disclosed variable-rate plan, a rate increase that occurs when an employee has been under a preferential rate agreement and terminates employment, or an increase that occurs when the consumer has been under an agreement to maintain a certain balance in a savings account in order

to keep a particular rate and the account balance falls below the specified minimum. In contrast, notice must be given if the contract allows the creditor to increase the rate at its discretion but does not include specific terms for an increase (for example, when an increase may occur under the creditor's contract reservation right to increase the periodic rate). . . .

3. *Timing—advance notice not required*. Advance notice of 15 days is not necessary—that is, a notice of change in terms is required, but it may be mailed or delivered as late as the effective date of the change—in two circumstances:

> If there is an increased periodic rate or any other finance charge attributable to the consumer's delinquency or default . . . .

The majority in *McCoy* thought it "clear" that comment 3 requires notice contemporaneous with a change in the rate of interest and therefore prevents a bank from increasing the rate on the first day of the billing cycle during which the bank invokes its contractual right to charge a higher rate. But, as Judge Cudahy observed at *38–*41, comment 1 deals with whether a separate notice is required, while comment 3 addresses *when* notices that are required by the regulation (as understood in comment 1) must be sent. Nothing in comment 3, which says that notice need not be "advance" in defined circumstances, provides that notice is required in the first place. The majority in *McCoy* replaced with ellipses the language in comment 3 showing that it concerns timing

of notice otherwise required. Strategic omissions do not make comment 3 a "clear" directive that overrides a contract specifying when a higher rate of interest will take effect.

Our opinion concluded that Swanson's state-law claims fall with her federal claims. Her petition for rehearing observes that *McCoy* reinstated claims under state law. For the reasons given in our original opinion, the only possible state claim would rest on Delaware banking law, because 12 U.S.C. §85 prohibits one state (here, Illinois) from overriding interest rates that are lawful in the state where a national bank is based (here, Delaware). Delaware permits banks to change interest rates in ways allowed by contract. "Without limitation, a permissible schedule or formula . . . may include provision in the agreement . . . for a change in the periodic percentage rate . . . applicable to all or any part of outstanding unpaid indebtedness . . . upon the happening of any event or circumstance specified in" the agreement. 5 Del. Code §944. The ninth circuit asserted that §944 does not authorize a bank to make discretionary changes in a borrower's rate of interest, because discretion differs from a "schedule or formula". Yet the statute does not say that only a "schedule or formula" may be used, nor does any decision of a Delaware court. The statute tells us that the bank's authority depends on its contracts. Section 944 permits a bank to make changes that are authorized by agreement with its customer. The changes that Bank of America made were expressly authorized by its contract with Swanson, so the Bank

has complied with §944 and may not be held liable under Illinois law.

   The petition for rehearing is denied. No judge has called for a vote on the petition for rehearing en banc, which therefore is denied.