# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES A. MCCOY, on behalf of
himself and all others similarly
situated,

*Plaintiff-Appellant,*

v.

CHASE MANHATTAN BANK, USA,
National Association,

*Defendant-Appellee.*

No. 06-56278

D.C. No.
CV-06-00107-JVS

ORDER AND
OPINION

On Remand from the United States Supreme Court

Filed August 19, 2011

Before: Richard D. Cudahy,* Harry Pregerson, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hawkins

---

*The Honorable Richard D. Cudahy, Senior Circuit Judge for the Seventh Circuit, sitting by designation.

## COUNSEL

Barry L. Kramer, Law Offices of Barry L. Kramer, Los Angeles, California, for the plaintiff-appellant.

Noah A. Levine, Wilmer Cutler Pickering Hale and Dorr, New York, New York, and Daniel S. Volchok, Wilmer Cutler Pickering Hale and Dorr, Washington, D.C., for the defendant-appellee.

## ORDER

The Opinion and Dissent filed March 16, 2009, and appearing at 559 F.3d 963 (9th Cir. 2009), are withdrawn. They may not be cited as precedent by or to this court or any district court of the Ninth Circuit.

## OPINION

HAWKINS, Senior Circuit Judge:

James A. McCoy ("McCoy") brought this action on behalf of himself and others similarly situated against Chase Manhattan Bank, USA, N.A. ("Chase"), alleging Chase increased his interest rates retroactively to the beginning of his payment cycle after his account was closed to new transactions as a result of a late payment to Chase or another creditor. He claimed that the rate increase violated the notice requirements of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1615, because Chase failed to give notice of the increase until it had already taken effect. He also asserted violations of state law, claiming that the Delaware Banking Act did not authorize discretionary post-default rate increases, but only rates of interest that "vary in accordance with a schedule or formula." 5 Del. C. § 944.[1]

In our prior decision, *McCoy v. Chase Manhattan Bank, USA*, 559 F.3d 963 (9th Cir. 2009), we reversed the dismissal of most of McCoy's federal and state claims. We concluded McCoy had stated a federal claim for violation of TILA and Regulation Z, 12 C.F.R. § 226, for Chase's failure to give notice of a discretionary interest rate increase due to consumer default. 559 F.3d at 967-69. We also concluded that

---

[1]Pursuant to the National Bank Act, as Chase's home state, Delaware law governs the interest rate charged by Chase and the methodology used to determine that rate. 12 U.S.C. § 85.

McCoy had successfully stated several state law claims for violation of Delaware law because the decision to increase rates upon default was discretionary and not based on a "schedule or formula." *Id.* at 970-71 (reversing claims for declaratory relief, reformation, and damages for imposing an illegal penalty).

[1] Appellees sought Supreme Court review of our decision, and in *Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871 (2011), the Court reversed our decision with respect to the federal claim and remanded for further proceedings.[2] We now withdraw our prior opinion, and, consistent with the Supreme Court's ruling, affirm the district court's dismissal of McCoy's first cause of action (violation of the TILA for failure to notify of rate increase), as well as his sixth cause of action (breach of contract for failure to notify him "of any change if required by applicable law").[3]

[2] Although the Supreme Court decision did not specifically address our ruling on McCoy's state law claims, we cannot ignore the significant legal developments in this regard since the time we issued our prior opinion.[4] Two federal appellate courts have reached a contrary conclusion regarding

---

[2] The Court deferred to an interpretation of Regulation Z advanced by the Board of Governors of the Federal Reserve System in an amicus brief filed with the Court, but recognized that "the Ninth Circuit did not have the benefit of briefing from the Board." 131 S. Ct. at 880 n.7.

[3] The parties were given an opportunity to provide supplemental briefing on the impact of the Supreme Court decision and various other legal developments affecting this case. McCoy concedes that the first and sixth causes of action are precluded by the Supreme Court's decision.

[4] This court routinely considers the effect of intervening developments on matters still pending before this court. *See, e.g.*, *Kawashima v. Holder*, 615 F.3d 1043, 1051 (9th Cir. 2010) (reconsidering initial opinion(s) in light of subsequent circuit and Supreme Court decisions); *see also Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) (court is free to reconsider previously decided questions if there has been an intervening change in law, new evidence has surfaced, or the previous disposition was clearly erroneous).

the interpretation of Delaware Banking Act § 944. In *Swanson v. Bank of America*, 563 F.3d 634, 636 (7th Cir. 2009), the Seventh Circuit criticized our conclusion:

> The ninth circuit asserted that § 944 does not authorize a bank to make discretionary changes in a borrower's rate of interest, because discretion differs from a "schedule or formula." Yet the statute does not say that only a "schedule or formula" may be used, nor does any decision of a Delaware court. The statute tells us that the bank's authority depends on its contracts. Section 944 permits a bank to make changes that are authorized by agreement with its customer. The changes that Bank of America made were expressly authorized by its contract with Swanson, so the Bank has complied with § 944 and may not be held liable under Illinois law.

In *Shaner v. Chase Bank USA, N.A.*, 587 F.3d 488, 494 (1st Cir. 2009), the First Circuit similarly reasoned:

> Shaner claims section 944's provisions are not satisfied here, arguing that Chase's card agreement did not provide a "schedule or formula" because the choice to increase the APR was discretionary with Chase. But the agreement explicitly made the discretionary increase contingent upon a default in payment; the Delaware banking statutes themselves say that the rate is to be "established in the manner provided in the agreement," Del.Code Ann. tit. 5, § 943, and that a "schedule or formula" includes "provision in the agreement . . . for a change in the [APR] . . . contingent upon the happening of any event or circumstance specified in the plan," *id.* § 944; and the Delaware State Bank Commissioner in an amicus brief confirms that the banking statutes permit Chase to reserve discretion as to whether to charge the maximum default rate.

**[3]** These subsequent decisions alone would give us pause regarding our prior interpretation of § 944, but, in addition, the Delaware legislature apparently agrees with the First and Seventh Circuits' interpretation of the provision. In response to the circuit conflict, the Delaware legislature enacted a clarifying amendment to § 944, adding the italicized sentence to the end of the section:

> If the agreement governing the revolving credit plan so provides, the periodic percentage rate or rates of interest under such plan may vary in accordance with a schedule or formula. . . . Without limitation, a permissible schedule or formula hereunder may include provision in the agreement governing the plan for a change in the periodic percentage rate or rates of interest . . . contingent upon the happening of any event or circumstance specified in the plan, which event or circumstance may include the failure of the borrower to perform in accordance with the terms of the plan. *Nothing herein precludes a bank from charging or reserving a right to charge, by discretion or otherwise, a rate lower than any maximum rate provided for in any schedule or formula.*

5 Del. C. § 944 (emphasis added)*, as amended by* 77 Del. Laws, ch. 279, § 1 (2010).

McCoy would have us ignore this clear direction altogether, or contort its meaning beyond recognition. McCoy argues that we should disregard the 2010 amendment because it should not be applied retroactively. While there is a presumption against retroactivity when there is a substantive *change* in the law, *see A.W. Fin. Servs., SA v. Empire Res., Inc.*, 981 A.2d 1114, 1120 (Del. 2009), the amendment here does not alter the meaning of § 944 but merely *clarifies* the meaning of the prior language, to the extent the former provision was ambiguous and leading to conflicting results in the courts. 1A Norman J. Singer & J.D. Shambie Singer, *Suther-*

*land Statutes and Statutory Construction*, § 22.31 (7th ed. 2011) ("If the amendment was enacted soon after controversies arose about interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act . . . ."); *Walls v. Dept. of Corr.*, 663 A.2d 488 (table), 1995 WL 420801, at *1 (Del. July 3, 1995) ("Where the legislature passes an amendment shortly after a controversy arises as to the meaning of the original statute, the amendment may be construed as a clarification of prior law.").

Moreover, if the import of this addition to the statute were somehow unclear, the synopsis of the bill erases any doubt that the amendment is a clarification rather than a substantive change:

> This Act provides a clarifying amendment to § 944 of Title 5 of the Delaware Code, *and does not change the meaning of the existing statute.* The Act clarifies that a schedule or formula providing for a maximum rate of interest under a revolving credit plan does not preclude a bank or licensed lender regulated by the State Bank Commissioner from charging or reserving the right to charge, by discretion or otherwise, a rate lower than any maximum rate provided for in any schedule or formula. *The clarification is prompted by a conflict in recent court decisions construing this section.*

S.B. 216, 145th Gen. Assembly (Del. 2010) (emphasis added). *See LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932 n. 13 (Del. 2007) ("'The synopsis of the [legislative bill is] a proper source from which to glean legislative intent.'") (alteration in original) (quoting *Carper v. New Castle County Bd. of Educ.*, 432 A.2d 1202, 1205 (Del. 1981)).

McCoy alternatively argues that § 944 as clarified nonetheless requires the rate increase to be in accordance with some

"schedule or formula" and that Chase fails to satisfy this requirement. But the statute clearly indicates that a "permissible schedule or formula" can include a provision to change the interest rate "contingent upon the happening of any event or circumstance specified in the plan," which may include borrower default. 5 Del. C. § 944. In our prior opinion, we reasoned that there was no "schedule or formula" because the cardmember agreement did not specify whether Chase was required to actually increase the rate in the event of default, and, if so, by how much, leaving the increase "discretionary." 559 F.3d at 970. The amendment speaks to precisely this point, clarifying that banks are free to charge, *by discretion or otherwise*, a rate lower than any maximum rate provided for in the agreement.[5] *See also Shaner*, 587 F.3d at 494.

**[4]** As Delaware law permits the actions taken by Chase—to raise interest rates in the event of default, if it so chooses, by an amount determined in its discretion up to the maximum rate permitted by the cardmember agreement—the district court correctly concluded that McCoy's second, third, and fourth state law causes of action are foreclosed.

Finally, as we explained in our prior opinion, McCoy's fifth cause of action fails to state a claim for consumer fraud under 6 Del. C. § 2513(a) because Chase openly and expressly notifies cardholders of the actions it reserves the right to take in the event of a default. McCoy's seventh cause of action fails to state a claim for breach of an implied duty of good faith because the contract already contained an express obligation for Chase to provide notices as required by law, and "where the subject at issue is expressly covered by

---

[5]To the extent that McCoy argues § 944 requires there to be *some* rate increase, we find no support for this proposition in the text of the provision, which clearly favors discretion on the bank's part to impose no increase, some increase, or the maximum increase in interest rate permitted by its contract; no increase is merely one form of a decision to charge a rate "lower than any maximum rate," as explicitly permitted by § 944.

the contract . . . the implied duty to perform in good faith does not come into play." *Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 23 (Del. Ch. 1992).

**[5]** Thus, because none of McCoy's claims survives, the district court properly dismissed the entire action with prejudice. The judgment of the district court is therefore **AFFIRMED**.